## UNITED STATES v. STAHLEY LAND & LIVESTOCK CO., Inc.

### No. 1360.

District Court, D. Wyoming.
March 21, 1930.

Albert D. Walton, U. S. Atty., of Cheyenne, Wyo., and John R. Wheeler, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for the United States.

P. W. Spaulding, of Evanston, Wyo., for defendant.

KENNEDY, District Judge.

This is an action at law instituted by the plaintiff to recover of the defendant income and excess profit taxes assessed for the year 1917. The case was tried to the court and submitted upon oral arguments and briefs, a jury having been waived in writing.

There seems to be little dispute as to the facts in the case. During the year 1916 and prior thereto, two brothers, Charles and John Stahley, were copartners engaged in the sheep business in the western part of this state. It seems that they ran in the neighborhood of some 8,000 sheep and that they owned certain real estate and other ranch property common to such enterprises. In April of 1916, Charles Stahley entered into an agreement with Joseph and Charles Lee to sell to them his undivided one-half interest in the copartnership for a consideration of $75,000, $10,000 of which was to be paid in cash during the year 1916 and the balance of $65,000 was to be paid thereafter in accordance with the terms of certain notes executed by the purchasers of the property and falling due at stated intervals. Upon the consummation of this agreement, John Stahley and the Lee brothers proposed to carry on the ranch business. In September, 1916, John Stahley and the Lee brothers incorporated their business as the Stahley Land & Livestock Company, which is the defendant herein. After the incorporation, both John and Charles Stahley, together with their wives, executed to the company deeds of the property formerly owned by the Stahley brothers in copartnership, that portion which was real estate having apparently stood in the individual names of the copartners. Following this, the corporation executed a mortgage covering an undivided one-half of all its property to Charles Stahley, purporting to secure the notes theretofore executed by the Lee brothers to him in consideration of the purchase price of his interest in the copartnership property of John and Charles Stahley. This entire deal took place and was consummated through a series of transactions during the year 1916, and throughout the year 1917 the corporation was apparently in full possession, control, and management of the entire property theretofore operated by the copartnership of John and Charles Stahley. Prior to April 1, 1918, the copartnership made its income and excess profit tax return to the government, in which it claimed a certain invested capital and made its computations accordingly, resulting in a tax being determined and paid in the sum of $4,731.97. An investigation of the books and accounts of the company was made by authorized officials of the Bureau of Internal Revenue, and a report thereon was made fixing as the invested capital of said corporation a total sum of $183,662.72, from which amount, however, was deducted $83,000, represented by the sum of $65,000 which was the face of the mortgage given by the corporation to secure the Lee notes, and $18,000 which it was claimed had been paid out as a dividend on November 1, 1916. By this computation, which was apparently approved by the Commissioner, the invested capital was reduced to the sum of $100,662.72. Upon the basis of this computation the defendant company was accordingly assessed for additional taxes for the year 1917 in the sum of $3,119.68. Thereafter a correction was made by the Bureau, upon what theory the evidence does not disclose, by which the defendant company was credited with the sum of $1,681.06, reducing the amount of the tax claimed to the sum of $1,438.62, the amount for the recovery of which this suit is brought.

Upon the final hearing the plaintiff introduced evidence of the assessment made by the Commissioner and the demand for payment of the taxes thereby shown to be due and rested its case. Thereupon the defendant moved for a dismissal upon the ground that the plaintiff had not sustained the burden of proof resting upon it under its petition. Instead of spending the time then in the midst of the trial to determine the point, the court decided to hear all the evidence in the case and take all matters under advisement, including the motion to dismiss, the same to be granted independent of the offering of testimony on the part of defendant should the point urged by defendant be well taken.

■ I am inclined to the view that the plaintiff should prevail in its theory that after plaintiff had shown the assessment as having been made in regular form, the burden then rested upon the defendant to show its illegality. While there are many cases upon this point, in the more recent one of Reinecke v. Spalding, 280 U. S. 227, at pages 232 and 233, 50 S. Ct. 96, 98, 74 L. Ed. 385, the court uses the following language:

"It was necessary for the taxpayer to show the illegality of the exactions. 'The burden of establishing that fact rested upon it, in order to show that it was entitled to the deduction which the Commissioner had disallowed, and that the additional tax was to that extent illegally assessed.' Botany Mills v. United States, 278 U. S. 282, 289, 290, 49 S. Ct. 129, 132, 73 L. Ed. 379; United States v. Anderson, 269 U. S. 422, 443, 46 S. Ct. 131, 70 L. Ed. 347. The real point is whether respondent established her claim for refund by adequate evidence."

This leads me to the conclusion that the evidence tendered by the defendant must be considered in ascertaining whether or not the burden resting upon it has been discharged under the rule.

It seems to be agreed that the determination of the legality of the major portion of the tax sued for concerns the $65,000 mortgage under an interpretation of section 207 of the Revenue Act Oct. 3, 1917 (40 Stat. 306), which reads as follows:

Section 207, Revenue Act of 1917:

"That as used in this title, the term 'invested capital' for any year means the average invested capital for the year, as defined and limited in this title, averaged monthly.

"As used in this title 'invested capital' does not include stocks, bonds (other than obligations of the United States), or other assets, the income from which is not subject to the tax imposed by this title, nor money or other property borrowed, and means, subject to the above limitations: (a) In the case of a corporation or partnership: (1) Actual cash paid in, (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation or partnership, at the time of such payment (but in case such tangible property was paid in prior to January first, nineteen hundred and fourteen, the actual cash value of such property as of January first, nineteen hundred and fourteen, but in no case to exceed the par value of the original stock or shares specifically issued therefor), and (3) paid in or earned surplus and undivided profits used or employed in the business. * * *"

■ As it appears to me, the evidence tends to show that the series of acts which took place in 1916 really represents one complete transaction. An undivided one-half in the copartnership property was purchased from Charles Stahley by the Lee brothers for a consideration of $75,000, for $65,000 of which they executed their individual and personal notes. This property so purchased thereafter went into the corporation and was used, owned, possessed and controlled by it. The real point in controversy arises by the divergent views in regard to the status of the $65,000 mortgage. Counsel for the plaintiff contend that it comes within the statute above quoted, in that it represents money or property borrowed and must be excluded from the classification of invested capital; while counsel for defendant maintain that inasmuch as the property was actually turned in and used by the corporation and the mortgage simply given as collateral security to the notes of others, the amount should not be excluded from the classification of invested capital.

In its true sense an ordinary mortgage is not a debt but is security for a debt. The debt in this case as represented by the notes was the debt of the Lee brothers and not of the corporation, and the corporation in no sense assumed the obligation or agreed to pay it, but only purported to mortgage a portion of its property to secure the payment. As to whether or not the corporation could legally so mortgage its property to secure debts of some of its stockholders is a question into which we need not inquire in this case, but we must determine the point upon the question of fact of whether or not the corporation did actually owe the debt so as to bring it within the classification of borrowed money under the statute. It is entirely conceivable that the corporation may never have intended to become responsible for the debt itself, except collaterally, and under such circumstances it would be scarcely fair to say that it was the debt of the corporation nevertheless and despite the fact that the transaction on its face shows to the contrary. In the event a forced collection of the notes became necessary, as the situation existed, it would seem apparent that any remedy against the company could not be resorted to until the ordinary remedies to effect the collection of the notes against the makers had been exhausted.

I am unable to see that the set-up of facts in this case presents a situation different, so

far as its legal effect is concerned, than would have been presented had the Lee brothers gone to a bank, borrowed $65,000, paid the same to Charles Stahley for his interest in his property, and then turned the same over to the corporation. In the latter situation I think that the property so purchased and turned over to the corporation would be rightly considered as invested capital. The mere fact that the Lees virtually borrowed the money from Stahley does not in my opinion alter the legal status of the transaction for the purposes of considering income tax. As to whether or not the notes were afterward paid or unpaid is not material, as the taxable status of the property for income tax purposes is determinable as of December 31, 1917. This brings me to the conclusion that the $65,000 was improperly deducted from the invested capital of the defendant.

As to the matter of the dividend alleged to have been paid on November 1, 1916, it seems to me that the defendant has not met the burden cast upon it by showing that this amount was improperly deducted from the capital investment account.

My conclusion is, therefore, that the item of $65,000 should be added to the invested capital account allowed by the Commissioner in his computation at $100,662.72, thereby fixing the invested capital for the purpose of computing the income and excess profit taxes at $165,662.72.

A computation may be submitted upon this basis by collaboration of counsel, and for the resulting amount the plaintiff will be given judgment, with interest, reserving to each party its proper exceptions.