ESTATE OF DAVID AFREMOW, BY SARAH AFREMOW, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39593.   Promulgated April 22, 1932.

*Douglas D. Felix, Esq.*, for the petitioner.
*George D. Brabson, Esq.*, for the respondent.

OPINION.

LOVE: This proceeding is for a redetermination of a deficiency in income taxes for the year 1925, in the amount of $18,735.64. The decedent, David Afremow, was a resident of Miami, Florida, and died on February 6, 1928. This proceeding was brought by Sarah Afremow, the duly appointed executrix of the estate of David Afremow.

The issues are:

(1) Whether the profit of $3,313.98 from the sale of Lot 15 Block 46 belonged to decedent as determined by the respondent or to decedent's wife as originally reported;

(2) Whether the profit of $17,935.85 from the sale of Lots 9, 10 and 11 of Block 96 belonged to decedent as determined by the respondent or to decedent's wife as originally reported;

(3) Whether the profit of $1,875 from the sale of a one-half interest in an option on Lot 7 of Block B and Lots 6, 7 and 8 of Block 56 belonged to decedent as determined by the respondent or to decedent's wife as originally reported;

(4) Whether the profit of $1,500 from the sale of a one-half interest in an option on Lots 11 and 12 of Block 51 belonged to decedent as determined by the respondent or to decedent's wife as originally reported;

(5) Whether the rent of $1,606.81 from Lot 4 of Block 87 (Jefferson Avenue Property) belonged to decedent as determined by the respondent or to decedent's wife as originally reported;

(6) Whether the profit of $25,555.44 from the sale of Lots A, 11, 12, 13 and 14, Mirado Court, belonged to decedent as determined

by respondent; and, if so, whether such profit should be reduced due to an excessive valuation by respondent of three purchase money mortgages, totaling $30,000, which were received by decedent as part of the selling price;

(7) Whether the respondent erred in including in decedent's income an item of $25,000 received by decedent in connection with a 99-year lease;

(8) Whether the respondent erred in valuing decedent's one-half interest in a second mortgage of $50,000 received from the sale of Lots 1, 2 and 3 of Block 10;

(9) Whether the respondent erred in valuing decedent's one-half interest in a second mortgage of $14,000 received from the sale of Lot 8 of Block 10;

(10) Whether the respondent erred in valuing a second mortgage of $135,000 received by decedent from the sale of Lots 13, 14, 15 and 16 of Block 104; and

(11) Whether the respondent erred in disallowing an amount of $8,400 claimed by decedent as a loss in a transaction with one B. F. Schoenberg.

We will discuss the issues in the order set forth above.

1. and 2. The first two issues will be considered together. The profit of $21,249.83 in question in these two issues was reported by Sarah Afremow (wife of decedent) in her individual income-tax return for the calendar year 1925. The respondent determined that such profit belonged to decedent and included it in his taxable net income.

Petitioner offered in evidence copies of three deeds which disclosed that the legal title to all of the property involved in these two issues was in the name of Sarah Afremow before its sale in 1925. In addition to this evidence decedent's wife testified that when she came to this country from Russia she had about $10,000 of her own; that on the day of decedent's death they had been married about thirty-five years; that the property here in question was her separate property; that her husband was her agent in buying and selling property for her; that he looked after all of her business; that he would take her out to see certain property and if she liked it he would buy it, " if he thought he could make me some money "; and that she always trusted him. When asked if anyone else had an interest in the property in question before it was sold in 1925, decedent's wife answered "No sir, it was my money that was used to buy it. It was my own property."

Article 11, section 1, of the Constitution of the State of Florida, provides as follows:

All property, real and personal, of a wife owned by her before marriage, or lawfully acquired afterward by gift, devise, bequest, descent, or purchase,

shall be her separate property, and the same shall not be liable for the debts of her husband without her consent given by some instrument in writing executed according to the law respecting conveyances by married women.

The respondent concedes that under the laws of the State of Florida a married woman can acquire and possess property, the income from which is recognized as her property, but contends that the record in the instant proceedings does not support a finding that the wife had a separate estate in the property sold. We are not in accord with this contention. In our opinion the record clearly shows that the decedent's wife owned the property that was sold and that the decedent sold such property for his wife as her agent. We, therefore, find as a fact that the income in question of $21,249.83 belonged to decedent's wife and that the respondent erred in determining it to be the income of the decedent.

3. and 4. The third and fourth issues will be considered together. The profit of $3,375 in question was reported by decedent's wife in her individual income-tax return for the year 1925. The respondent determined that such profit belonged to decedent and included it in his taxable net income.

The evidence offered by petitioner with respect to these two issues is too meager to warrant us in disturbing the respondent's determination relative thereto. Regarding the third issue, this evidence consisted of a ledger sheet taken from the books of decedent. It was captioned "Mrs. Sarah Afremow, Mr. Morris Tipp—Statement of Settlement of Lot 7—Block B, Lots 6–7–8 Block 56." The debit side of the account was as follows:

| | | |
|---|---|---:|
| Aug. 27, 1925 | Binder_____ | $425.00 |
| " | _____ | 840.00 |
| | | $1,265.00 |
| Profit | _____ | 3,750.00 |
| | | $5,015.00 |
| Mrs. Afremow profit | _____ | $1,875.00 |

The credit side of the account showed a check of $3,015 and notes of $2,000 (or a total of $5,015) as received in August, 1925. No evidence was offered as to who furnished the option money. The accountant who prepared the returns for decedent and his wife testified that he wrote to Morris Tipp in Chicago, but received no reply; that he searched through decedent's papers, but could find nothing on this transaction; and that he was advised by the clerk of the Broward County Court that he had no record of such an option. Mrs. Afremow testified regarding the fourth issue as follows:

Q. 10. Do you remember whether or not in 1925 you had any transaction with Mr. Tipp with regard to lots 11 and 12, Block 51 Hollywood property where you had an option on it?

A. I do not remember. I remember Mr. Tipp. My husband used to talk to him. I do not know what. I do not know what was going on.

Q. 11. Do you remember owning an option on lots 11 and 12, Block 51 in Hollywood with Mr. Tipp?

A. I remember this Mr. Tipp but I do not remember what it was.

The respondent's determination as to issues 3 and 4 is sustained.

5. The evidence offered in connection with the fifth issue is substantially the same as was offered in connection with the first two issues. On May 19, 1925, Carl E. Schirmacher deeded the property in question to Sarah Afremow. It was part of her own separate estate and the income of $1,606.81 belonged to her and not to the decedent. The respondent erred in including such income in the taxable net income of the decedent.

6. Regarding the sixth issue petitioner now concedes that any profit from the sale of the lots in question belonged to decedent, but contends that three purchase money mortgages received in the transaction were overvalued by the respondent. The respondent contends that the pleadings do not put in issue the valuation of the mortgages, and, if they do, the fair market value of such mortgages was equal to their face value.

Assignment of error 4 B (second paragraph) is as follows:

The Commissioner, in fact, included as income to the above named taxpayer all of the income of Mrs. Sarah Afremow aggregating $44,056.30, according to the agent's report, although the property from which this income was derived belonged to Mrs. Sarah Afremow.

The amount of $25,555.44 involved in this issue constitutes a part of the $44,056.30 mentioned in the assignments of error. The petition might be more specific than it is, but in substance it alleges that the respondent erred in including any part of the $25,555.44 in the decedent's income. Petitioner now concedes that a part of the $25,555.44 was correctly included and contests the balance, but for a different reason. Counsel for the respondent did not object when the evidence as to the value of the mortgages was offered. In fact he cross-examined petitioner's witnesses as to such value. Under the circumstances we will consider the pleadings as placing in issue the fair market value of the three purchase money mortgages, to wit:

| Property sold | Face value of mortgage received |
|---|---|
| Lot A | $20, 000 |
| Lots 11 and 12 | 5, 000 |
| Lots 13 and 14 | 5, 000 |

The provisions of the statute involved in this and the remaining issues where the "fair market value" of mortgages is considered are subdivisions (a) and (c) of section 202 of the Revenue Act of 1926, which are as follows:

(a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the *amount realized* therefrom over the basis provided in subdivision (a) or (b) of section 204, and the loss shall be the excess of such basis over the *amount realized.* [Italics supplied.]

(c) The *amount realized* from the sale or other disposition of property shall be the sum of any money received plus the *fair market value* of the property (other than money) received. [Italics supplied.]

The property in the instant issue was sold for a consideration of cash and the three purchase money mortgages. The respondent determined that the fair market value of such mortgages was equal to the face value thereof, namely, $30,000. The petitioner contends that the fair market value of such mortgages was only a total of $15,000. The burden of proving a lesser value than determined by the respondent rests upon petitioner. *Burnet* v. *Houston*, 283 U. S. 223; *Botany Worsted Mills* v. *United States*, 278 U. S. 282; *Reinecke* v. *Spalding*, 280 U. S. 227; and *Niles Bement Pond Co.* v. *United States*, 281 U. S. 357.

The evidence offered by petitioner on this and the remaining issues wherein the fair market value of mortgages is concerned, consists of the testimony of Stephen R. Crawford and C. A. Avant, two financiers of Miami, who were acquainted with all of the property covered by all of the mortgages as to which they testified. Crawford was president of the Mortgage and Management Corporation and in 1925 he was managing vice president of the Miami Mortgage and Guaranty Company and had supervision of all of the company's affairs. He did practically all of the appraising of property for loans. He was connected with this company from 1920 to 1930, during which period the company loaned between six and seven million dollars in Miami. Avant is in the loan and insurance business. He is vice president of the Seminole Bond and Mortgage Company, a Miami concern that was incorporated in 1921. Avant went to Miami in 1914 and was familiar with the mortgage market in Miami in 1925. His present duties are buying and selling mortgages and real estate, and writing various kinds of insurance. As will later appear from our ultimate findings of value in each of the issues where the fair market value of mortgages is involved, we have given full credence to the testimony of petitioner's two witnesses, but have also considered such other evidence in the case as the selling price of the property in question, the amount of cash and first mortgages received, and the original cost to petitioner's husband where such was disclosed.

Regarding the $20,000 mortgage taken in connection with the sale of Lot A, Crawford testified that it probably could have been sold for around 75 cents on the dollar, but certainly not to exceed 80 cents

on the dollar; that on a speculative market it might have been sold at somewhere between 90 and 95 cents on the dollar; and that a more definite market was around 75 cents on the dollar. Avant testified that it was his opinion " that this mortgage could have been sold at approximately 50% of the face value." The respondent offered no evidence as to the value of the mortgages involved in this or the remaining issues. We find as a fact that the fair market value of the $20,000 purchase money mortgage received by decedent in 1925 as part consideration for the sale of Lot A, Mirado Court was $15,000.

Regarding the $5,000 mortgage taken in connection with the sale of Lots 11 and 12, Crawford testified that these lots were about 40 by 55 feet each; that they were vacant and unimproved; and that on a speculative sale one could not have realized any more than 40 cents on the dollar for that mortgage. Avant testified that " There was practically no demand for the sale of mortgages on vacant property at that time, but the mortgage could possibly have been sold for 25% of its face value in July, 1925." We find as a fact that the fair market value of the $5,000 purchase money mortgage received by decedent in 1925 as part consideration for the sale of Lots 11 and 12, Mirado Court, was $2,500.

Regarding the $5,000 mortgage taken in connection with the sale of Lots 13 and 14, Crawford testified that these lots were a little larger (about 55 by 60 feet); that there was a cheap garage apartment on Lot 13; and that " you could probably get a little more for that mortgage, perhaps as much as 50% as a speculative purchase." Avant believed " The mortgage could possibly have been sold at from $2,500.00 to $3,000.00." We find as a fact that the fair market value of the $5,000 purchase money mortgage received by decedent in 1925 as part consideration for the sale of Lots 13 and 14, Mirado Court, was $3,000.

7. Petitioner in her brief concedes that the respondent's determination as to the seventh issue was correct.

8. On April 1, 1925, decedent and one Fabian Randel sold Lots 1, 2 and 3 of Block 10 to one Joseph Varbalow for a total consideration of $125,000, itemized as follows:

| | |
|---|---|
| Cash | $35,000 |
| First mortgage assumed | 40,000 |
| Second mortgage notes received | 50,000 |
| Total | 125,000 |

Decedent owned a one-half undivided interest in the transaction. The respondent determined that the fair market value of decedent's one-half interest in the second mortgage notes was equal to their

face value, and further determined that decedent realized a taxable profit on the transaction of $25,160.48, as follows:

*Amount realized:*

| | |
|---|---|
| Cash | $17,500.00 |
| First mortgage assumed | 20,000.00 |
| Second mortgage notes | 25,000.00 |
| Total | 62,500.00 |

*Deduct basis:*

| | |
|---|---|
| Cost and improvements less depreciation | 37,339.52 |
| Taxable profit | 25,160.48 |

Decedent on his return reported a taxable profit of $160.48, and in so doing he treated the second mortgage notes as having no fair market value. Petitioner contends that decedent's treatment of the transaction on his return was correct.

Upon the entire record we find as a fact that the fair market value of decedent's one-half interest in the second mortgage of $50,000 received as part consideration for the sale of Lots 1, 2 and 3, Block 10, was $5,000.

9. During the year 1925 decedent and one F. Randel sold Lot 8 of Block 10 for a total consideration of $30,000, itemized as follows:

| | |
|---|---|
| Cash | $10,000 |
| First mortgage assumed | 6,000 |
| Second mortgage notes received | 14,000 |
| Total consideration | 30,000 |

Decedent owned a one-half undivided interest in the transaction. The respondent determined that the fair market value of decedent's one-half interest in the second mortgage notes was $2,333.33 and further determined that decedent realized a profit on the transaction of $5,333.33, as follows:

*Amount realized:*

| | |
|---|---|
| Cash | $5,000.00 |
| First mortgage assumed | 3,000.00 |
| Second mortgage notes | 2,333.33 |
| | 10,333.33 |

*Deduct basis:*

| | |
|---|---|
| Cost in 1921 | 5,000.00 |
| Taxable profit | 5,333.33 |

Decedent on his return reported a taxable profit of $3,000 and in so doing he treated the second mortgage notes as having no fair market value. Petitioner contends that decedent's treatment of the transaction on his return was correct.

Upon the entire record we find as a fact that the fair market value of decedent's one-half interest in the second mortgage of $14,000 received as part consideration for the sale of Lot 8 of Block 10 was $1,000.

10. During the year 1925 decedent sold Lots 13, 14, 15 and 16 of Block 104 for a total consideration of $275,000, itemized as follows:

| | |
|---|---:|
| Cash | $65,000 |
| First mortgage assumed | 75,000 |
| Second mortgage notes received | 135,000 |
| Total consideration | 275,000 |

The respondent determined that the fair market value of the second mortgage notes was $33,250, and further determined that decedent realized a profit on the transaction of $38,180.35, as follows:

*Amount realized:*

| | |
|---|---:|
| Cash | $65,000.00 |
| First mortgage assumed | 75,000.00 |
| Second mortgage notes | 33,250.00 |
| Total | 173,250.00 |

*Deduct basis:*

| | |
|---|---:|
| Cost in 1925 and expenses | 135,069.65 |
| Taxable profit | 38,180.35 |

Petitioner contends that the second mortgage notes received by the decedent in the transaction had no fair market value. The decedent so treated the notes in his income-tax return.

Upon the entire record we find as a fact that the fair market value of the second mortgage of $135,000 received by decedent in 1925 as part consideration for the sale of Lots 13, 14, 15 and 16 of Block 104 was $25,000.

11. In connection with the eleventh and last issue, petitioner in her brief states that she concedes the item not because the respondent was correct, but because, due to decedent's death and the inadequacy of his books, she is unable to offer the required proof.

The deficiency should be redetermined in accordance with this opinion.

*Judgment will be entered under Rule 50.*