OLD COLONY TRUST COMPANY, TRUSTEE UNDER AN INDENTURE OF TRUST OF PAUL WILDE JACKSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74928.   Promulgated October 29, 1935.

*F. V. Barstow, Esq.*, for the petitioner.
*Hartford Allen, Esq.*, for the respondent.

#### OPINION.

MURDOCK: The Commissioner determined a deficiency of $21,589.91 in income tax of the petitioner for the calendar year 1931. The petitioner assigns as error the action of the Commissioner in including as taxable income for 1931, (1) " amounts of income paid to annuitants in the year 1931 pursuant to the said Deed of Trust ", and (2) " amounts of income, including gains from the sale of securities, that pursuant to the terms of the Deed of Trust have, in accordance with the provisions of the Revenue Act of 1928, section 162 (a), been paid or permanently set aside for the purposes and in the manner specified in section 23 (n) of the said Act or have been used exclusively for religious, charitable, or educational purposes or for the prevention of cruelty to children."

The facts were stipulated and need not be set forth in full detail.

The petitioner is the surviving trustee of a trust established by Paul Wilde Jackson by a deed dated July 19, 1922. The trust was created for the purpose of carrying out some wishes of the grantor's brother, who died intestate, leaving the grantor as his sole heir. The trust deed placed the property received from the brother in trust and provided for the distribution of a part of it in ways not now

**312**

material. It then directed the trustees to pay the following amounts to the following persons for life:

| | |
|---|---|
| Selina Henrietta Butler (for many years an employee of the brother) | $3, 600 per annum |
| Alice Eliza Butler (sister of Selina) | 1, 500 " " |
| Harriet Elizabeth Butler (sister of Selina) | 1, 500 " " |
| Edgar Jason Ames (for many years coachman for the brother) | 25 per week |
| Alice C. Moulton (child of a brother-in-law of the brother) | 1, 000 per annum |
| Claribel M. Waterman (" " ") | 1, 000 " " |
| Mary Smith (" " ") | 1, 000 " " |
| Annie Marston (" " ") | 1, 000 " " |
| Henry W. Kendall (one-time partner of deceased brother) and after his death to his wife, Mary Josephine Kendall | 2, 000 " " |
| Paul Wilde Jackson (the grantor) and after his death to his wife, Matilda Adelaide Jackson | 10, 000 " " |
| Edith Adelaide Holbrook (daughter of grantor) and, if she so directs, after her death to her husband, Irvin N. Holbrook | 10, 000 " " |
| Frederick Henry Jackson (son of grantor) and after his death to his wife, while she remains unmarried | 10, 000 " " |

It also provided that the trustees were to " set apart " $5,000 for a grandson of the grantor and pay it over with accumulations at the end of ten years.

Paragraph 13 of the deed of trust is as follows:

I AUTHORIZE my said trustees to pay to charities as hereinafter described such sums as in their judgment may be paid without jeopardizing the annuities herein provided for, whenever for a period of one year the trust fund held by them as then invested shall have yielded a net income equal to twice the amount of the annuities which they are then required to pay, and upon the death of the survivor of those persons, who under the terms of this instrument are to receive annual incomes under the trust hereby created, I DIRECT my said trustees to distribute the rest and residue remaining in their hands among corporations and trustees organized, operating and holding exclusively for religious, charitable, scientific, literary or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, the sum paid over by said trustees to such corporations or boards of trustees to be held by such corporations and boards of trustees in trust, and the income thereof to be expended for the general purposes for which such corporations and boards of trustees are organized, and I request that said funds be designated by each corporation or board of trustees as the Henry Clay Jackson Fund.

The trustees were also authorized to organize new charities and to build buildings for charities, if they deemed it wise to do so.

The first receipt of principal by the taxpayer under the trust was on May 29, 1923, and upon that date separate ledger sheets for the principal, and for the income (exclusive of profits from sales of corpus) of the trust were opened. The first receipt of income was on June 30, 1923. The principal (corpus) account has always been maintained separate and apart from the income account. No annuity payments or payments to charitable organizations have been charged on the books to the principal account, which account includes accumulated profits from sales of securities.

The amount of income of the trust for each year since the taxpayer has held the principal, has been more than twice the aggregate of the annuity payments required in such year by the terms of the trust and the taxpayer considered that it had power to pay to charities defined in the trust instrument such parts of the principal and income of the trust as in its judgment could be paid without jeopardizing the annuities, except that during the life of the grantor or his wife and daughter the trustee was obliged to confer with the grantor or his wife and daughter before making a gift to charity. The grantor died June 21, 1928, his wife June 30, 1928 and his daughter October 26, 1923.

The taxpayer considered that it had power to make gifts from the principal and income of the trust to charities and it also has considered that all of the trust properties in excess of that part of the income which it considered necessary for the trust expenses and annuity payments belonged to charities. Since 1925 it has appropriated and/or paid certain sums to specific charities * * *.

The trustees had paid $436,242.21 to charities prior to January 1, 1931. The market value of the trust corpus was $2,119,835.81 on January 1, 1931, and $1,488,140.43 on December 31, 1931, while the cash balance on those dates was $193,779.43 and $89,553.99, respectively. The accumulated income on hand on January 1, 1931, was $187,999.43. The amounts paid to charities during 1931 and the dates on which the payments were made were:

| | |
|---|---:|
| August 12 | $25,000 |
| September 9 | 25,000 |
| September 12 | 30,000 |
| November 11 | 25,000 |
| December 16 | 85,000 |
| Total | 190,000 |

The $30,000 listed above was in payment of a part of the unpaid balance of an appropriation made in 1929.

The trust received income during 1931 of $60,901.82 from the sale of securities and $114,417.36 from other sources. The Commissioner determined that the net income for the year amounted to $164,339.39. The trustees paid $22,350 to annuitants during the year.

The total annuities distributed or distributable in 1931 and the ages of the annuitants were as follows:

| Annuitant | Age | Annuity |
|---|---|---:|
| Selina H. Butler | 54 | $3,600 |
| Alice E. Butler | 62 | 1,500 |
| Edgar Jason Ames | 73 | 1,300 |
| Claribel M. Waterman | 63 | 1,000 |
| Mary Smith | 65 | 1,000 |
| Annie Marston | 74 | 1,000 |
| Mary J. Kendall | 85 | 2,000 |
| Frederick H. Jackson | 59 | 10,000 |
| Harriet E. Butler | 55 | 1,500 |
| Total | | $22,900 |

The cost of purchasing annuities for all of the annuitants of 1931 at their ages in that year if purchased during the first six months of 1931 from The New York Life Insurance Company would have been $200,804.33.

The taxpayer's returns were made upon a cash receipts and disbursements basis.

The petitioner filed a fiduciary return for 1931 showing income apportioned to annuitants and to itself. It also filed an individual return for the year showing total income of $80,315.16 and a deduction of a like amount " Set aside for Charitable and Educational Purposes." Capital gains of $49,641.07 were shown as " Set aside for Charitable and Educational Purposes."

The Commissioner allocated all of the taxable income to the petitioner and allowed no deductions for income distributed to annuitants or set aside for charitable and educational purposes.

The first question for decision is whether the petitioner may deduct from its gross income for tax purposes the amounts distributable to the annuitants in 1931. Section 162 (b) of the Revenue Act of 1928 provides in part as follows:

There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, * * * but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

The deed of trust clearly discloses an intention on the part of the grantor to make the annuities charges upon both the income and corpus of the estate held by the trustees at any time when payments of annuities should become due. The annuities were " payable at all events " and did not " depend upon income from the trust estate." The annuities were, therefore, gifts and the trustees were not entitled to deduct the amounts paid to the annuitants in 1931. *Helvering* v. *Pardee*, 290 U. S. 365; *Burnet* v. *Whitehouse*, 283 U. S. 148; *Boston Safe Deposit & Trust Co.* v. *Commissioner*, 66 Fed. (2d) 179 (affirming 26 B. T. A. 486); certiorari denied, 290 U. S. 700; *Bridgeport-City Trust Co., Trustee*, 32 B. T. A. 1181.

The other question for decision is whether the petitioner is entitled to deduct " any part of the gross income " for 1931 under section 162 (a), which is as follows:

There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (n)), any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (n), or is to be used exclusively for religious, charitable, scientific, literary, or educational pur-

poses, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit.

The petitioner contends that the gain from the sale of securities was deductible. It concedes that this particular gain was added to corpus and was not actually " paid " to any one in 1931. But it contends that this income was " permanently set aside " during the taxable year for charitable purposes or " is to be used exclusively " for purposes mentioned in section 162 (a). The Board and the court to which this case would go upon appeal have held under somewhat similar circumstances that no deduction is allowed where such gains are merely added to the corpus of the trust in accordance with the trust instrument. *Boston Safe Deposit & Trust Co.* v. *Commissioner, supra; Bank of America National Association, Trustee,* 19 B. T. A. 1273; *Charles W. Jaynes et al., Trustees,* 29 B. T. A. 259; *Gertrude Hemler Tracy et al., Trustees,* 30 B. T. A. 1156. See, *contra, Hartford-Connecticut Trust Co.* v. *Eaton,* 41 Fed. (2d) 69. This is because it can not be definitely determined during the taxable year that this part of the gross income of the trust has been permanently set aside for charitable purposes or is to be used exclusively for such purposes. As long as there is a possibility that the income may have to be used pursuant to the terms of the trust deed for purposes other than charitable ones, the deduction may not be allowed under the provisions of section 162 (a) and similar provisions of earlier acts. Here the same conclusion must be reached as was reached in the cases cited, since the grantor intended that not only this particular income, but also the corpus of the trust remaining at any given time, could be used to pay the annuities. Despite the large surplus of income over annuity payments in 1931, no funds of the trust were permanently set aside or were to be used exclusively for charitable purposes under this trust instrument, except such trust funds as were actually paid to charities during that year. The exception does not apply to the gains from the sale of securities, since they were not paid to charities during that year.

The grantor of the trust made certain provisions to safeguard the payments to the annuitants. But he must have realized that as the annuity payments decreased some of the trust funds could be used for charitable purposes without endangering the payment of the gifts to the annuitants, since the latter could be amply protected by the income and corpus of the remaining trust property. In the deed of trust he gave to the trustees authority to use funds of the trust for charitable purposes, under certain circumstances, during the lives of the annuitants. However, he did not direct them to use trust funds during that period for charitable purposes nor did he

say whether they should use income or corpus in case they decided to make a gift to charity during that period. Yet it seems clear from the deed as a whole that the trustees had authority to pay the amounts to charities which they actually paid in 1931. They had authority to make such payments from any available source within the trust, i. e., they could use corpus, accumulated income, or excess current earnings of 1931. Since their authority was so broad, it may be important to determine, if possible, the source from which the payments to charity were actually made.

The trustees chose to make the payments from and to charge them to income, rather than corpus. The facts as stipulated show that the trustees, in making their appropriations, did not have in mind the income of the current taxable year. They considered only the income available on June 2, 1931. That consisted principally of the accumulated income of a prior year. The accumulated income at the beginning of the year amounted to $187,999.43. They made appropriations of $180,000. They paid in 1931 $160,000 of the amount thus appropriated and $30,000 appropriated in 1929. These facts rather indicate that the trustees in 1931 really intended to distribute income theretofore accumulated rather than to distribute the current income of 1931. They charged the payments to income rather than to corpus. But the income account included both accumulated and current income. They did, of course, eliminate the gains from the sales of securities in 1931 by adding that to the corpus which they did not intend to touch. They also allocated a part of the 1931 income to the payment of the annuities and current expenses of that year. This left about $80,000 of the gross income of 1931 unallocated. Income of prior years on hand at the beginning of the year 1931 in the amount of $187,999.43 was available for the payments to charities. The question is, How much, if any, of the gross income of 1931 was paid to the charities in 1931 and thus used for charitable purposes pursuant to the terms of the deed creating the trust within the meaning of section 162 (a)? The deduction is based upon the use of the income subject to tax and not upon the use of accumulated income of prior years.

Under some circumstances the arbitrary acts of fiduciaries have been deemed of no significance in determining whether or not a deduction is proper for the estate. *Bowers* v. *Slocum*, 20 Fed. (2d) 350; *E. Sohier Welch et al., Trustees*, 9 B. T. A. 1370; *Hu L. McClung et al., Executors*, 13 B. T. A. 335. The petitioner was not required to use income for payment of the gifts to charities. If the above cited cases apply the petitioner would not be entitled to any deduction merely because the trustee chose to account for the

payments to charities as made from income rather than from corpus. Any gifts actually paid from income of 1931 were in one sense paid pursuant to the deed of trust. The petitioner had the burden of showing the amount paid from gross income of 1931. The total payments made in 1931 exceeded the accumulated income on hand at the beginning of that year by $2,000.57. Thus the latter amount must have been paid from income of 1931. However, the petitioner has not shown that more than $2,000.57 of the $190,000 was paid from gross income of 1931, nor has it suggested any method of determining how much more of the $190,000 was paid out of gross income of 1931. *Lynchburg Trust & Savings Bank et al., Trustees*, 27 B. T. A. 1182 (reversed on other grounds, 68 Fed. (2d) 356). Even the impossibility of establishing the specific amount, made essential by statute as a prerequisite to the allowance of the deduction, does not justify a deduction computed arbitrarily, but leaves the taxpayer with an unenforceable claim. *Burnet* v. *Houston*, 283 U. S. 223. Here the Board has no way of determining how much of the $190,000 payments in excess of $2,000.57 might have been made from 1931 income and how much from prior accumulations. Some arbitrary allocation might be made, of course, but no sufficient justification for such procedure appears. The right to a deduction must be proved and a failure of proof results in a loss of the deduction. *Burnet* v. *Houston, supra; Reinecke* v. *Spalding*, 280 U. S. 227, 233; *United States* v. *Anderson*, 269 U. S. 422, 443.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

SMITH, dissenting: There appears to be no question but that the net income of the trust fund for 1931, before the deduction from the gross income of amounts paid to annuitants and amounts paid or set aside for charitable and educational purposes, was $164,339.39, as determined by the respondent. The trust paid to annuitants $22,350. The deduction of this amount was correctly disallowed by the respondent.

Section 162 (a) of the Revenue Act of 1928 permits the deduction from the gross income of the trust of " any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (n)." The amount paid to charities by the trust during 1931 was $190,000 or an amount in excess of the total gross income for the year. I am of the opinion that under section 162 (a) the petitioner

was entitled to deduct from its gross income the full amount of $141,989.39, the difference between the net income as determined by the respondent and the amounts paid to annuitants. I can not believe that the theory invoked in the majority opinion to the effect that the trust must show from what receipts the payments to charities were made in order to have them deductible is responsive to the legislative intent. And it is the legislative intent which should control in the construction of the taxing statute.

It is further to be noted that the entire income of the trust fund was to be paid to charitable and other organizations referred to in section 23 (n) after the payment of expenses and annuities. If the trust fund is required to pay the tax determined by the Board in this case, the payment impinges upon the amount which would otherwise go to charities. In my opinion this was never contemplated by Congress and, as stated by the Supreme Court in *Lederer* v. *Stockton*, 260 U. S. 3: " To allow the technical formality of the trust, which does not prevent the Hospital from really enjoying the income, would be to defeat the beneficent purpose of Congress."

ARUNDELL, dissenting: Beginning with the 1913 Revenue Act and down to date Congress has disclosed a progressively liberal attitude in dealing with contributions to charity. This beneficent purpose should not be defeated by a strained and technical approach. *Lederer* v. *Stockton*, 260 U. S. 3. In my opinion petitioner has clearly established its right to deduct a very large part of the sum actually paid by it to charities within the taxable year.

TRAMMELL and MATTHEWS agree with this dissent.