## HOUSTON OIL COMPANY OF TEXAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24075, 32525.    Promulgated April 30, 1936.

*Irl F. Kennerly, Esq.*, for the petitioner.
*A. H. Fast, Esq., H. L. Young, Esq.*, and *R. B. Cannon, Esq.*, for the respondent.

475

OPINION.

SEAWELL: In determining the deficiencies the respondent included all of the amounts received under the stumpage contract and agreement of May 27, 1921, in petitioner's gross income and allowed as a deduction therefrom depletion at the rate of $3.31516 per thousand feet. The transactions were treated in that manner on the theory that the relationship of lessor and lessee existed between the petitioner and the Lumber Co. Such contention has been abandoned and his present view is that the amount includable in gross income is the selling price, less the petitioner's basis, which, he contends, is the value on March 1, 1913, of its interest in the timber covered by the stumpage contract and decree. He thinks the value of such interest should be determined by what the right to receive $5 in the taxable periods was worth in 1913. Such a theory could not be applied to the 1921 sale, since the agreement therefor was not entered into until that year. It is claimed by the respondent that the testimony of his sole witness supports a valuation of such interest equal to the amount he allowed for depletion. The witness testified to a valuation of $3.81 per thousand, based upon the contract price of $5 per thousand exist-

ing on March 1, 1913, discounted for a period of eight years, without any allowance for storm damage, etc. The respondent thinks that the valuation should be reduced to $3.31516 per thousand for storm damage, etc., without any proof of the extent of such damages, if any. By such methods he seeks to justify a March 1, 1913, basis for the timber equal to his allowance for depletion.

The position of the petitioner is that the subject for valuation as of March 1, 1913, is the timber, the thing owned at that time and sold in the taxable periods. It contends that such value should be determined without reference to the terms of the stumpage contract.

The respondent properly abandoned his theory that the stumpage contract created the relationship of lessor and lessee. Clearly it was an agreement for the purchase and sale of timber. During each of the taxable periods the Lumber Co. paid for more timber than it cut and removed, and the sales contract fixed no definite time for cutting and removing timber paid for. Under the circumstances, title to the timber paid for remained in petitioner until the timber was cut and removed. *Houston Oil Co. of Texas* v. *Boykin*, 109 Tex. 276; 206 S. W. 815; *Florence A. Foster*, 18 B. T. A. 819; affirmed on this point, *Foster* v. *Commissioner*, 57 Fed. (2d) 516; *Carrie Lutcher Brown*, 26 B. T. A. 781; affd., 69 Fed. (2d) 863; certiorari denied, 293 U. S. 579.

In *Florence A. Foster*, *supra*, the petitioner acquired under the will of her husband an interest in a contract for the sale of timber located in Texas. Title to the timber did not pass until the property was cut, removed, and paid for. The primary question was whether the petitioner acquired timber under her husband's will, burdened with the contract, or rights to receive payments in the future. We held that the thing she acquired was timber, and, in computing loss from storm damage and gains from sales, used as a basis the fair market value of the timber as of the date of acquisition by the petitioner. The appellate court modified the Board's finding of value, but sustained the conclusion of the Board that the property for valuation was the timber rather than an interest in a contract. It held that such value should be fixed without reference to the contract for the sale of the timber. In so holding it said, among other things:

* * * Does the fact that, though the timber was in 1913 worth $5 per thousand, there was an option against it requiring the owner, if the purchasers proceeded in accordance with the contract minimum, to carry it until 1921, to receive then $5 without interest, authorize its valuation in 1913 for income tax purposes, at $3.50, roughly $5, discounted for the time? * * *

We do not think the existence of the contract affects the valuation at all. We find no warrant in the statutes or the regulations governing the fixing of values for income tax purposes for this time discounting theory. They fix as the basis for determining loss or gain "the fair market price or value of

the property at the time of its acquisition." We think there is no more warrant for fixing the value in 1913 for income tax purposes at $3.50 by discounting forwards and thus establishing a gain in 1921 than there would be for fixing the amount received in 1921 at $3.50 by discounting backwards; that is, allowing the taxpayer a credit on the $5 value existing in 1913 for carrying charges, and thus establishing a loss. The question for decision here is not the value of the payments which Mrs. Foster might or might not, according to whether and how it was performed, receive at one time or another under the option contract. It is not whether she may have the benefit of the carrying charge to show a loss, nor whether, as here claimed, it may be used against her to depress the value of the base. The question simply is, What was the value in 1913 of the timber which she lost, and of that which she sold in 1920 and 1921? and we think the answer to it as simple, is that it was $5 per thousand.

We find nothing in *Reinecke* v. *Spalding*, 280 U. S. 227, contrary to the *Foster* case. There the question was the amount of depletion the taxpayer was entitled to as the owner of an interest in a lease giving the lessor the right to a royalty of 25 cents per ton for ore removed from mines. No sale of property, as here, was involved. The court refused to accept the suggestion that market value of the taxpayer's rights on March 1, 1913, was equivalent to the amount of the royalty, discounted to the time paid. No depletion was allowed because of failure to establish the fair market value of the taxpayer's interest in the mines on the basic date. Here, as in the *Foster* case, the question is simply the fair market value of the timber on the basic date.

The expert testimony offered by the parties to establish the fair market value of the timber on March 1, 1913, is conflicting. One of the petitioner's witnesses testified to a value of $6.35 per thousand feet, a figure based upon an estimate that of the timber 85 percent was long leaf and the remainder short leaf. The other witness expressed an opinion that the fair market value of the timber was $7 per thousand feet. The respondent's witness, whose knowledge of the timber was limited to a small part thereof, placed a valuation of $4 per thousand feet on the property. The evidence discloses a sale of 275,000,000 feet of timber in 1908 at $5 per thousand feet, with no explanation of the circumstances surrounding the transaction. There was no testimony to show the fluctuation, if any, of the values from 1908 to 1913, but the proof is that they were about the same from 1910 to 1913. The Lumber Co. made some sales in 1912 and 1913 at from $6 to $6.50 per thousand feet, and at about that time it made a sale at the price of $5.50 per thousand feet. While these sales of the Lumber Co. were characterized as "sacrifice sales" to raise funds to meet semiannual payments under the stumpage contract, without proof that the timber so sold did not bring its fair market value, we think the sales are entitled to weight. From all

the evidence on the point we find that the timber covered by the stumpage contract and decree had a fair market value on March 1, 1913, of $6 per thousand feet.

Since the selling price of the timber was less than the March 1, 1913, fair market value thereof, but in excess of cost, the sales made thereof by the petitioner did not result in taxable gain or a deductible loss in any of the taxable periods. *United States* v. *Flannery*, 268 U. S. 98; section 202 (b), Revenue Act of 1921; *William H. Haywood*, 12 B. T. A. 407.

In computing gain realized by the Development Co. in 1920 and 1921 from the sale of timber the respondent allowed amounts as a deduction from the selling price which he designated as "value." The record furnishes no explanation of how he determined the amounts, $4,879.82 in the case of the small sales made in 1920, and $900,000 in the case of the sales in 1921, or why he used value on an undisclosed date rather than cost. The revenue agent used cost, $2.50 per thousand for the hardwood timber and $5 per thousand for the yellow pine. Such action was proper. The proof here is that the timber was acquired in 1916 from the petitioner at the costs used by the revenue agent. It was located on the same land as the timber under sale of the Lumber Co., but was different timber from that covered by the stumpage contract and decree. The gain realized or loss sustained will be recomputed on the basis of cost of $2.50 per thousand feet for the hardwood timber and $5 per thousand feet for the yellow pine.

The petitioner alleges that the respondent erred in not increasing its invested capital in 1920 for the value of the land and options received from Kirby for $20,000,000 par value of its stock, claiming that such property had a value of not less than $30,000,000. While the issue is referred to in petitioner's brief as one of the questions present for decision, it is not discussed therein or in petitioner's reply brief.

The stock was issued in 1901 for tangible and intangible property, but no testimony was offered on the cash value of the property. Lacking any basis for increasing invested capital for the property received for stock, we must sustain the respondent.

The remaining issue relates to a net loss deduction in 1920 under the provisions of section 204 (b) of the Revenue Act of 1918. Pursuant to agreement of counsel the amount of the net loss, if any, will be settled under Rule 50.

*Decision will be entered under Rule 50.*