## WORKINGMEN'S LOAN ASS'N v. UNITED STATES.
### Civil Action No. 1528.

District Court, D. Massachusetts.
Feb. 23, 1943.

Edmund Burke, of Boston, Mass., and Reginald Heber Smith, Jr., and Jackson R. Collins, both of New York City, for plaintiff.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and James L. Chapman, Sp. Assts. to Atty. Gen., for defendant.

FORD, District Judge.

This taxpayer is a small loans company incorporated under a special Massachusetts statute. It paid for the taxable year 1937 a "personal holding company" surtax, Section 351, Revenue Act of 1936, c. 690, 49 Stat. 1648, as amended by Section 1 of the Revenue Act of 1937, c. 815, 50 Stat. 813, 26 U.S.C.A. Int.Rev.Acts, page 973,[1] in the amount of $7,855.57. The plaintiff claims the assessment was erroneous and sues to recover it.

The facts have been stipulated. During the tax year in question more than 50 per cent in value of the outstanding stock of the plaintiff was owned by not more than five individuals, as the term "individual" is defined in Section 352(a)(2) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 938. The main question involved is whether 80 per cent of the taxpayer's gross income for 1937 was derived from "interest" within the meaning of that term as used in Section 353(a) of the 1936 Act.[2]

During the year 1937 the gross income

---

[1] "Sec. 351. Surtax on Personal Holding Companies. Amendment by Revenue Act 1937.

"There shall be levied, collected, and paid, for each taxable year (in addition to the taxes imposed by Title I), upon the undistributed adjusted net income of every personal holding company a surtax equal to the sum of the following:

"(1) 65 per centum of the amount thereof not in excess of $2,000; plus

"(2) 75 per centum of the amount thereof in excess of $2,000."

[2] "Sec. 353. Personal holding company income.

"For the purposes of this title the term

of the taxpayer, derived wholly from payments to it by borrowers, amounted to $125,714.18. Of this amount $37,544.46 or 29.88 per cent of gross income was derived from what the plaintiff calls "initial charges" to its customers for loans, and $88,159.72 or 70.12 per cent of the gross income from payments the plaintiff denominated as "interest" on the loans.

In order to escape being classed as a "personal holding company" within the meaning of Section 352 of the Act of 1936, the plaintiff must sustain the burden of proving that more than 20 per cent of the payments it had received from borrowers were of a nature other than "interest" as that term is used in Section 353 of the 1936 Revenue Act. Reinecke v. Spalding, 280 U.S. 227, 232, 233, 50 S.Ct. 96, 74 L.Ed. 385; Noteman v. Welch, 1 Cir., 108 F.2d 206.

It was stipulated that the "initial charges" were for investigation, identification, inspection and appraisal and were the customary and usual charges made by concerns engaged in business similar to that conducted by the plaintiff. These were blanket charges assessed against all borrowers and no evidence was introduced to show that any service was rendered to any particular borrower or in connection with any particular loan for which a charge was made.

What investigation, identification, inspection and appraisal consisted of particularly was not shown. But it is fair to infer that no loan was made without investigation and that many loans were investigated and not made. This service was essentially for the benefit of the lender and it is plain that in a great many cases the investigation expenses would be practically nothing, while in others the expense would be material, especially investigation with respect to delinquent borrowers. It is plain, however, that the expense for investigating was spread over all borrowers. The inspection and appraisal service was likewise a service for the benefit of the lender. This expense in connection with unsecured loans amounted to nothing, yet these loans bore part of this expense. Under these circumstances it is not possible to arrive at any proper determination of how much of the $37,544.46 was derived from "charges" to borrowers. A considerable portion of

these charges were expenses of the lender and charged to the borrower. Whatever service was not rendered to the borrower cannot be regarded as a "charge" to him. With respect to those borrowers who paid "charges" for services not rendered to them but which were rendered to other borrowers, these "charges" are part of what the borrower contracted to pay for the use of the money, i. e., "interest". It is these considerations that lead to the conclusion that the taxpayer has failed to prove what part of its gross income was derived from payments for services rendered the borrowers, which must be proved before it can be said that the taxpayer has shown that more than 20 per cent of its gross income was derived from something other than "interest".

It was upon this failure to sustain the burden of proof that the court in the parallel case of Noteman v. Welch, supra, affirmed the judgment entered for the defendant in the district court. In my opinion there is no essential difference between the facts in that case and here. Although the plaintiff contends that the fact that "charges" in the instant case were made initially and separately from "interest" distinguishes that case from this, I cannot agree. If anything, it is merely a bookkeeping difference. Cases cited by the plaintiff wherein charges are made for specific services rendered to an individual borrower are not helpful here. In those cases payments for collection of delinquent debts, etc., are plainly not interest; they are charges for actual services performed for the borrower. Cf. In re Mesibovsky, 2 Cir., 200 F. 562.

In the present case, the plaintiff has not adduced the proper proof to show what part of its gross income was not interest. In some cases, charges with respect to the borrowers were fair and reasonable charges apart from interest, but the difficulty is to find in what cases the charges were proper and the nature of the charge for the purpose of determining for whose benefit the expense was incurred and whether or not it involved an actual service performed by the lender apart from loaning the money. As stated above, if the charge was made for a service of benefit to the lender this would be a payment for the use of the money and "interest" within the

---

'personal holding company income' means the portion of the gross income which consists of:

"(a) Dividends, interest, royalties (other than mineral, oil, or gas royalties), annuities."

meaning of the Revenue Act. Cf. In re Prince, 2 Cir., 89 F.2d 681.

■ Further, in the light of the plaintiff's failure to show an agreement for some actual service rendered the borrowers, I believe that the total gross income of the plaintiff must be regarded as "interest" within the meaning of the Revenue Act. No other conclusion is warranted. The mere fact that the bookkeeping was a little different here, i. e., initial charges being separated from interest is of no moment. From the borrowers' viewpoint, as far as the evidence goes, the payments they contracted to make were for the use of the money. There was no evidence that any specific actual services were contemplated to be rendered by the lender as in the Mesibovsky case. In cases of the latter type, it can be easily said that the payments were for something other than interest, but not so here. Cf. Old Colony Railroad Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484; Girard Inv. Co. v. Commissioner, 3 Cir., 122 F.2d 843, 844; and see Treasury Regulations 94, Art. 351-2.

■ It is my conclusion that the plaintiff during the taxable year in question was a personal holding company within the meaning of the Revenue Act of 1936 and subject to the surtax imposed by Section 351 of the Act.

Judgment for the defendant, with costs.