DODGE v. GAGNE, Collector of Internal Revenue.

No. 990.

District Court, D. New Hampshire.
June 25, 1938.

McLane, Davis & Carleton, of Manchester, N. H., for plaintiff.

Alexander Murchie, U. S. Atty., of Concord, N. H., for defendant.

MORRIS, District Judge.

This is a jury waived action at law, (facts agreed), to recover a portion of an estate tax in the amount of $462.60, together with interest thereon from December 5, 1935, alleged to have been erroneously and illegally assessed against, and collected from, the plaintiff, as administrator of the estate of Van H. Dodge, deceased, who was a resident of Whitefield, New Hampshire, and who died on January 4, 1934. The plaintiff, as such administrator, filed a Federal estate tax return and paid the taxes shown thereby, on February 2, 1935. Subsequently, the Commissioner of Internal Revenue made a redetermination of the estate tax liability, and therein determined a deficiency in the estate tax of Van H. Dodge in the sum of $857.69, which, together with interest of $24.96, was paid on December 5, 1935. On October 26, 1936, a claim for the refund of $462.60 thus paid was filed by the plaintiff, and it was rejected by the Commissioner on December 15, 1936.

The controversy in this case is predicated upon the difference in the return and the redetermination respecting the item of "Debts of Decedent" claimed and allowed as a deduction. In the return the amount of $48,384.15 was claimed, while the Commissioner allowed the amount of $41,493.-02, a difference of $6,891.13, which represents the amounts of two promissory notes, one for $3,174.98, and the other for $3,-716.15. The facts with respect to these two items are hereafter stated. The decedent's (Van H. Dodge's) brother, whose name was Charles E. Dodge, was president of, and a large stockholder in, the Codo Manufacturing Company of Chicago. This company encountered financial difficulties, and Charles E. Dodge used almost all of his individual property in an attempt to

**730**

restore it to the status of a going concern. The result was that Charles also got into financial difficulties, and at his solicitation, and so that he might obtain money for the needs of the Company, Charles procured Van H. Dodge's accommodation endorsements on two notes in the same amounts as the two notes involved here. Charles discounted said notes and obtained the proceeds thereof, no part of which was ever received by Van H. Dodge. Charles Dodge advanced the proceeds to Codo Manufacturing Company.

The interest due on such notes from time to time was paid by Charles until he died. After his death his widow, Ida M. Dodge, executed renewal notes in substitution for the two notes of her husband and Van H. Dodge endorsed them. She owned and inherited from her husband stock of Codo Manufacturing Company, and for a time received dividends which were sufficient to enable her to live and pay the interest on the notes. From about 1930 the Company ceased to pay dividends and she ceased to pay interest, whereupon Van H. Dodge paid the interest until he died. Ida M. Dodge, who died in 1937, lived during the last years of her life on the proceeds of sales of her stock in Codo Manufacturing Company and died without assets. Codo Manufacturing Company continued to do business and at the date of Van Dodge's death, January 4, 1934, the preferred stock was worth $20 per share, the common stock having no value. The amounts of said renewal notes are those which the plaintiff, having paid the same from the proceeds of Van H. Dodge's Estate, now claims are proper deductions from the decedent's gross estate under and by virtue of section 303(a) (1) of the Revenue Act of 1926, as amended, 26 U.S.C.A. § 412(b) (3).

The applicable provision of the statute under which the Commissioner's redetermination of an additional assessment was made is worded as follows:

"For the purpose of the tax the value of the net estate shall be determined in the case of a citizen or resident of the United States by deducting from the value of the gross estate—* * * (b) Such amounts— * * * (3) for claims against the estate, * * * as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered. * * * The deduction herein allowed in the case of claims against the estate * * * shall,

when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth."

This statute has been the subject of consideration and interpretation by several courts of appeals but all seem to agree as to the purpose of Congress in its passage. The evils to be prevented are well set out in the case of Carney v. Benz, 90 F.2d 747, 113 A.L.R. 365, decided by the First Circuit. The statute is to be construed according to the natural and reasonable meaning of the words used, having in mind the purpose which it was designed to accomplish. The purpose of this section in the light of its legislative history was to prevent deductions, under the guise of claims of what were in reality gifts or testamentary distributions.

In Commissioner of Internal Revenue v. Porter, 2 Cir., 92 F.2d 426, the purpose of the amendment is stated thus (page 428): "The purpose of the phrase under discussion was, in our opinion, to prevent a man from diminishing his taxable estate by creating obligations not meant correspondingly to increase it but intended as gifts or a means of distributing it after his death." We find nothing in the statement of facts that indicates any intention on the part of the deceased to create an obligation for the purpose of diminishing his taxable estate. The transaction was an ordinary one wherein the deceased having confidence in his brother's ability to carry on the business in which he was engaged, endorsed notes, that new money could be raised with which to rehabilitate the Company. The dates of the original notes are not mentioned but they were evidently given prior to 1930 when the Company ceased to pay dividends. There are cases which seem to hold that the obligor must derive some benefit from the transaction but this theory seems to be exploded and discarded as a test in the case of Porter v. Commissioner (C.C.A.2) 60 F.2d 673 at page 675; wherein it is said: "We need not limit it to cases where the consideration passes to the testator; for example, a promise to pay for goods delivered to another might fall within it, if the testator has recourse over. But if he has not, the transaction is in substance a gift." There is nothing to indicate any intention of Van H. Dodge to make his brother a gift of the sums of money represented by the two notes. Under the ordinary rules

of law applicable to such endorsements, Van H. Dodge obligated himself to pay the notes if his brother did not do so, and if the endorser did pay them, there is nothing to indicate that he abandoned any recourse against his brother if the sums so paid were collectible. It is apparent that Ida M. Dodge inherited property from her husband. Stock of the Codo Manufacturing Company passed to her and with it the obligation to pay the notes in question. She assumed the obligation and gave new notes which were likewise endorsed by her brother-in-law Van H. Dodge. If there had been any intention to make a gift of the money there was no reason for the giving of new notes with the new endorsements. There was no call for Dodge to pay the notes until the maker was called on to do so. This never happened until the death of Ida Dodge, the sister-in-law, when the payee called on the endorser. It is contended by the defendant that the transactions constituted a gift, but the argument appears to be labored. I see nothing to indicate that the transaction was anything out of the ordinary. It is common for a person to sign notes for the purpose of helping another, having confidence that he will never be called upon to pay and it is human nature to postpone payment so long as there is any hope that the maker will discharge his obligation.

The Act provides that there shall be deducted from the gross estate "such amounts * * * for claims against the estate * * * as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered." It cannot be seriously questioned that Dodge's endorsement of his sister-in-law's note was a valid claim against his estate under the laws of the State of New Hampshire. That obligation had existed for some years. The fact that Dodge paid the interest on the notes subsequent to the date when his sister-in-law became unable to do so, indicates only that he was trying to postpone the day of payment. It may have been because he had other use for his money or that the same was tied upon in investments and unavailable. Payment was eventually made after his death from his estate.

The statute was enacted to prevent deductions under the guise of claims which were in reality gifts or testamentary distributions. The transactions in the case at bar do not fall within either of the above provisions.

It was not the idea of Congress to levy an estate tax on what the deceased honestly owed and it is not the province of the Court to extend the application of the statute beyond the purposes for which it was enacted.

I hold that the administrator was entitled to deduct from the gross estate the amount paid on account of the deceased's endorsement of the notes in question and that he is entitled to recover from the defendants the sum of $462.60 with interest from December 5, 1935.

The order is, verdict for the plaintiff for $462.60 with interest.

The defendant's requests for rulings of law are denied. To this denial the defendant excepted and his exceptions are noted.