Moses Ely, as Limited Ancillary Executor, etc., of Joshua Bennett Holden, Plaintiff, *v.* Mary McCormick Stone, Defendant.

Supreme Court, Special Term, New York County, January 18, 1940.

*McLean, Ferris, Ely & Pain* [*Moses Ely* and *George Gruberg* of counsel], for the plaintiff.

*Franchot & Schachtel* [*Alfred L. Becker* of counsel], for the defendant.

CAREW, J.  Although the parties have treated this as an action in equity it is really an action at law.  It is brought by a guarantor against his principal debtor to recover by subrogation the debt which the guarantor has paid.  Since the case of *Decker* v. *Pope* in 1757 (reported in 1 Selwyn's Nisi Prius [13th ed.], p. 91), before Lord MANSFIELD, such an obligation has been regarded as a quasi contract recoverable at law.  In 1821 Lord ELDON said of it: " Until I became acquainted with that case (*Toussaint* v. *Martinnant*, [1787] 2 T. R. 105) I thought the remedy must be in equity." (*Stirling* v. *Forrester*, 3 Bligh, 575–590.)

It was regarded as a quasi contract enforcible at law for a sum of money in an action of assumpsit in *Tom* v. *Goodrich* (2 Johns. 213 [1807]).  (See, also, Keener, Quasi Contracts, 400.)

The period of limitations on it, therefore, is six years even though the parties have treated it as an equity.  (*Steinert* v. *Title G. & T. Co.* (N. Y. L. J. Dec. 27, 1939, p. 2324.)  The debt was ascertained on January 2, 1931, when the defendant's account with her stockbrokers was closed out showing a debit of $34,959.32.  On December 9, 1931, the defendant gave her creditors a signed acknowledgment of the debt as of September 29, 1931.  It is from that date, December 9, 1931, that the Statute of Limitations starts to run.  This action was started December 18, 1936, by the First National Bank of Boston, the Massachusetts executor of the guarantor, who died on February 11, 1934, a resident of Boston, Mass.  No objection was made by motion or answer to its lack of capacity to sue, so that was waived.  (*Robbins* v. *Wells*, 18 Abb. Pr. 191, 195; *Van Zandt* v. *Van Zandt*, 26 N. Y. St. Repr. 963; *Perkins* v. *Stimmel*, 114 N. Y. 359, 369.)  On the trial, December 20, 1939, Moses Ely, the ancillary executor appointed in New York, was substituted as plaintiff.  That substitution was unnecessary and, therefore, immaterial on the question of the bar of limitations, and that defense, therefore, is overruled.

At and prior to his death on February 11, 1934, at Boston, Mass., the plaintiff's testator, Joshua B. Holden, was and for many years had been a close friend and relative by marriage of the defendant and a member of the New York Stock Exchange firm of Laphan, Potter & Holden.  In March, 1927, Mr. Holden opened an account

in the New York office of his firm for the defendant, who put up no consideration or margin. He closed it on June 24, 1927, with a profit of $1,056.07 paid to the defendant. He opened it again on July 27, 1927, again without any advance from her, and closed it on August 19, 1927, with a profit of $273.64 paid to the defendant. On December 20, 1927, he opened it again without advance from her, and in it, on June 3, 1929, the defendant, her appetite for speculation sharpened by these gains, deposited $17,000 cash. On September 26, 1929, the defendant received therefrom the sum of $2,000. She overstayed the boom of Harding and Coolidge and, between December 30, 1930, and January 2, 1931, all the securities in the account were sold and a debit balance against the defendant cast for $34,959.32. This is the last item in this account. On December 31, 1930, Mr. Holden, who had an interest of $300,000 in his firm's capital, set up a charge on the firm's books of $50,000 against his interest to guarantee payment of the defendant's account and those of three other customers of his. On March 16, 1931, Mr. Holden signed a written guaranty of the indebtedness of the defendant and of the other three customers of his. On December 31, 1931, he increased his guaranty of his four customers' accounts by $13,346.11. There is no evidence in the case that the defendant ever knew anything of these various guaranties by Mr. Holden. It is testified by his surviving partners that he had orally guaranteed these accounts from their opening as the customers had put up nothing. He was not, therefore, a mere volunteer injecting himself without reason in the situation.

The defendant claims that Mr. Holden's guaranties, unknown to her, were never intended by him to be a basis for subrogation; that he put her into the market and badly handled her account; that he was her close relative, friend and adviser; that he realized he had handled her account badly; that no demand was ever made during his lifetime (he lived for over two years after the account was closed out) either by the firm or by him for payment thereof, and she also testifies that she had a letter in his handwriting in which, after the account was closed and before he died, he wrote that the account was closed out satisfactorily.

Her son proved her qualifications to testify this letter was in Holden's handwriting. She and Holden, so the son testified, and their families held the most intimate relations, spending their summers together as neighbors, friends and visitors at York Harbor, Me.; that she frequently saw him write in her presence, frequently received from him checks signed by himself. On that testimony she was qualified to say it was in his (Holden's) handwriting. (*Hoag* v. *Wright,* 174 N. Y. 36; Greenfield on " Testimony under

Section 347, C. P. A., formerly Section 829, C. C. P.," § 204.) Mrs. Munson testified that she saw this letter, read it, saw the defendant destroy it as having served its purpose after Holden's death, but she is not clear as to whether it was a discharge of the account to the firm or to Holden individually. The defendant testified to the same effect. She is competent to do so.

Subrogation does not arise in this case from contract or agreement with the defendant. It is raised, if at all, by the court to compel equity and justice, to compel one who really should in conscience and justice pay a debt he owes rather than one who is only secondarily liable and, of course, it is never raised where the party secondarily liable does not wish to raise it, where he is making a gift or performing what seems to be equity to him or where subsequently for similar reasons he waives or discharges it. Not being a matter of contract it may be waived or discharged without consideration, and, once waived, it is gone. (39 Harv. L. Rev. 381, 383.) And, as an officious volunteer cannot invoke it, it will not be officiously raised by a court. It seems to me that the failure to show any demand by the firm of which he was a member or effort to invoke it by the deceased during his life, and the letter testified to by the witness Munson and the defendant indicates that he, for reasons satisfactory to himself, did not want to hold her liable for the debt which he had paid. While I have ruled that this action is not barred by the Statute of Limitations, the failure of the deceased to demand repayment to him or payment to his firm is some evidence of laches which has caused loss of evidence by death to all concerned, and that also must be considered. (*Seligson* v. *Weiss*, 222 App. Div. 634; 4 Pomeroy's Equity Jurisprudence [4th ed.], § 1442 [§ 21]; *M. & C. Creditors Corporation* v. *Pratt*, 172 Misc. 695, 721, and cases cited.)

Judgment for the defendant dismissing the complaint on the merits, with costs.