## HARTFORD NAT. BANK & TRUST CO. et al. v. SMITH, Collector of Internal Revenue.

### No. 165.

District Court, D. Connecticut.

Dec. 27, 1940.

Day, Berry & Howard and Cyril Coleman, all of Hartford, Conn., for plaintiffs.

Robert P. Butler, U. S. Atty., and Valentine J. Sacco, Asst. U. S. Atty., both of Hartford, Conn., and Julian G. Gibbs, Sp. Asst. to the Atty. Gen., for defendant.

HINCKS, District Judge.

This is an action brought by the plaintiffs as executors under the will of Harriet Hansel, late of West Hartford, deceased, to recover from the Collector a claimed overpayment of the estate tax heretofore paid.

### Findings of Fact.

1. Plaintiffs' decedent died on July 6, 1935.

2. The plaintiffs duly filed an estate tax return showing that certain securities having a fair market value, in the aggregate, of $283,570, constituted a part of the gross estate. The return did not show that the interest of the estate in said securities had a value less than the fair market value thereof by reason of the fact that said securities had been pledged by the decedent nor did it show as an asset of the gross estate any claim owned by the decedent arising out of the transaction which had resulted in said pledge. More specifically, the return did not show any aspect of the transaction described in Paragraph 4, below.

3. An estate tax in the amount of $36,-233.01 was duly paid by the plaintiffs as follows: $36,031.29 on March 17, 1936 and $201.75 on December 1, 1936.

4. Prior to her death, the decedent had loaned the use of the securities referred to in Paragraph 2, above, to her two sons under an arrangement whereby part thereof had been pledged to the Bank to secure the notes of her son, Robert D. Hastings, to the Bank in the amount of $151,837, and the remainder had been pledged to the Bank to secure the note of her son, R. Cleveland Hastings, to the Bank in the amount of $60,000. As a part of said transaction, the decedent under hypothecation agreements with the Bank became personally liable to the Bank for said loans in the aggregate amount of $211,837; and her ownership of said securities had become qualified by a right on the part of the Bank as pledgee to sell the securities and to apply their proceeds to the discharge of said notes made by the sons. Also as a part of said transaction the decedent acquired a right to be indemnified by said sons for any loss to her or to her estate arising out of said transaction. The arrangement accomplished by said transaction was for no stated duration and was still in force at the time of the decedent's death.

5. The plaintiffs seasonably filed a claim for refund based upon the contention that at the time of her death the then outstanding pledge of her securities to the Bank constituted an incumbrance or charge upon her general property in said securities effective to reduce their fair market value by $211,837 so that the tax should be computed upon a net estate correspondingly reduced. This claim for refund was rejected and the pending action seasonably brought.

6. The plaintiffs have failed to prove that the decedent's right of indemnity

against her two sons was worthless as of her death, or indeed that said right of indemnity had a value less by any specific amount than the then existing liability of the decedent to the Bank resulting from the rights of the Bank against the decedent and her said securities under the hypothecation agreements set forth in Paragraph 4 above. In short, the plaintiffs have failed to sustain the burden of proving that the net estate was in fact less than that upon which the tax paid was computed.

### Comment

Here the decedent at the time of her death was party to a transaction which for proper record would have required entry on each side of her ledger. On the liability side were the rights of the Bank against her and her securities; on the asset side was her right of indemnity against her sons.

Granted for the sake of argument that the special property which the decedent gave the Bank in securities operated to reduce the value of her general property therein, it does not follow that her net estate was correspondingly reduced; that would follow only if the evidence showed also that other aspects of the transaction which plaintiffs invoke did not serve to increase the gross estate. And there is no such evidence here. On the contrary, the evidence affirmatively shows that as a part of the very transaction upon which plaintiffs rely the gross estate was augmented by the decedent's right of indemnity against her sons,—a right having a face value precisely equal to the deduction which plaintiffs claim.

Nor is there evidence from which I can find that the actual value of the decedent's right of indemnity, as of the date of death, fell short of its face value by any specific amount. I recognize, of course, that the actual value of the right depended entirely upon factors relating to the sons whose liability it was. Their financial resources and their prospective earning capacities were factors of especial importance.

With respect to R. Cleveland Hastings, the face amount of his liability to the decedent had been only $60,000. Paragraph 4, supra. Yet the evidence shows that his share of the decedent's estate had a value in excess of that amount, and thus suggests that the decedent's right of indemnity as against him was fully worth its face value. Indeed, in view of the right of the estate to set-off, it would be far-fetched to contend that his liabilities to others (of which there was no evidence) operated to reduce below par the right of the estate against him.

With respect to Robert D. Hastings, the face amount of the decedent's right was $151,837. This was more than his share of the estate proved actually to be worth. But his testimony showed that at the date of death he had (as his only financial asset—if it then was an asset) an interest in a brokerage firm such that "the liquidation value of the assets could never have liquidated out my interest or repaid me what I put into the firm." Yet for aught that appears as of the date of death, the firm might have had a net worth sufficient to cover a substantial part of the witness' investment, if not all of it. Moreover, the value of the estate's claim against him depended also upon his earning capacity. Even if his financial resources had been swept away in the depression, for aught the evidence shows one appearing to be in full vigor of life and experienced in the brokerage business may well have had a potential earning capacity sufficient to support a valuation of the claim against him at par, especially in view of the fact that the amount of the claim against him was in effect at least partially secured by his beneficial interest in the estate.

Altogether it is impossible to find definite proof that the decedent's rights of indemnity at the time of her death had a value less than the value of the Bank's rights against her securities. Hence my finding that proof of the transaction upon which plaintiffs rely is ineffective to prove a lesser net estate than that upon which the tax was paid.

### Conclusions of Law

7. The defendant is entitled to judgment, with costs.

### Comment

Though I incline to take as sound the plaintiffs' contention that the Bank's pledge was effective to reduce the value of decedent's securities by the sum of $211,837., it is not necessary for me to rule definitely thereon. For whether sound or not, the finding set forth in Paragraph 6 precludes a recovery here.

■ On the return as filed there was no disclosure of the transaction described in Paragraph 4. The transaction is definitely one having two aspects; one on the

asset side, the other on the liability side. The plaintiffs cannot be permitted to take the tax advantage resulting from an application of the one side of the transaction without such adjustment as would be required for an application of the other side. On the proofs here, I cannot say that the resulting addition to the gross estate is less than its resulting reduction; that any change in the net estate has been shown. Thus the only applicable conclusion is that expressed above.

■ Nor is there ground for plaintiffs' contention that under the pleadings there was no issue as to the value of the decedent's right of indemnity from her sons. Paragraph 11 of the complaint says: "Based on such reductions in net value (of the securities), the total estate tax should have been $10,169.37 instead of $36,233.-04." But obviously to show a lower tax the plaintiffs must prove a lower net estate. Thus in legal effect the plaintiffs have alleged a lower net estate, and this allegation the defendant in Paragraph 3 of the answer has denied. Thus is framed a clear-cut issue of fact as to which, of course, the burden of proof was on the plaintiffs. Cf. Burnet v. Houston, 283 U. S. 223, 51 S.Ct. 413, 75 L.Ed. 991; Reinecke v. Spalding, 280 U.S. 227, 50 S.Ct. 96, 74 L.Ed. 385.

Dated at New Haven this 27th day of December, 1940.