638

Ray A. Brown, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., and J. P. Wenchel, Chief Counsel, and R. F. Staubly, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for petitioner for review.

John H. Devine, of Boston, Mass., for Wragg, administrator.

Before MAHONEY and WOODBURY, Circuit Judges, and PETERS, District Judge.

WOODBURY, Circuit Judge.

This is a petition by the Commissioner of Internal Revenue for review of a decision of the Tax Court of the United States holding that there is no deficiency in the federal estate tax paid by the respondent on the Estate of one George H. Lowe, Sr. The statute involved is § 303 of the Revenue Act of 1926, 44 Stat. Part II, p. 72, as amended by § 805 of the Revenue Act of 1932, 47 Stat. 280, and § 403 of the Revenue Act of 1934, 48 Stat. 753, 26 U.S.C.A. Int.Rev.Acts, page 232, which, so far as material here, is copied in the margin.[1]

The Tax Court found the following facts. Between 1883 and 1910 the decedent devoted his time exclusively to the business of Carter, Rice and Co., Inc., and Nashua Gummed and Coated Paper Co., both successful corporations, and during that time the decedent acquired substantial amounts of stock in both of them. This stock was closely held, unlisted and without a ready market.

About 1910 the decedent and his son, George H. Lowe, Jr., organized the Weymouth Art Leather Company, a corporation which engaged in the business of manufacturing a leather substitute by painting cloth. The decedent furnished the original capital for this corporation and served as an officer and a director of it until 1932. He placed his son in charge of its affairs.

During the period from 1917 or 1918 to 1925 the decedent pledged all of his

---

[1] "Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a citizen or resident of the United States, by deducting from the value of the gross estate—

* * *

"(1) Such amounts—

* * * * *

"(C) for claims against the estate,

"(D) for unpaid mortgages upon, or any indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, and * * * as are allowed by the laws of the jurisdiction, * * * under which the estate is being administered. * * * The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth."

shares of stock in Carter, Rice and Co., Inc., and Nashua Gummed and Coated Paper Co. as collateral to secure various promissory notes for money borrowed from individuals and banking institutions by George H. Lowe, Jr. Some of these notes the decedent also either signed as co-maker or endorsed. A substantial part of the money borrowed by the son and for which the decedent pledged his stocks was used to finance Weymouth. Weymouth was solvent when the loans were negotiated and both the decedent and his son expected that the loans would be repaid.

By 1932 the decedent's health had begun to fail and the various holders of the notes and obligations which had been created by George H. Lowe, Jr. and the decedent were pressing for payment and threatening to sell the shares owned and deposited by the decedent as collateral. In this state of affairs on February 25, 1932, Samuel H. Wragg, the respondent, was appointed conservator of the decedent's estate by the Norfolk County Probate Court. Immediately upon his appointment the conservator brought a petition in the above Probate Court seeking to restrain the various persons and institutions holding collateral notes from selling the collateral, and, after hearing on the merits, that court enjoined all parties holding such securities from selling them. When the conservator took office the total obligations for which the decedent had pledged his shares in Carter, Rice and Co., Inc., and Nashua Gummed and Coated Paper Company amounted to approximately $233,000 and the pledged shares had a book value of about double that amount.

For a number of years prior to 1932 the decedent had also given direct financial assistance to his son, some of which the son had from time to time repaid. In 1934, the conservator brought an action in the Municipal Court of the City of Boston against the son for the money advanced directly to him and recovered a judgment therein in the amount of two hundred and forty-five thousand dollars. Execution issued on November 3, 1934, but it does not appear that it was ever levied upon or that anything was ever paid in satisfaction thereof.

During the course of his duties as conservator the respondent refinanced certain of the loans secured by pledge of the decedent's stocks in order to save the equity in those stocks for the estate, it being necessary for him to secure title to the pledged stocks in order to sell them in one block.

George H. Lowe, Sr., died, testate, a resident of Needham, Massachusetts, on February 11, 1937, and his former conservator was appointed and duly qualified as administrator c.t.a.d.b.n. of his estate. In his estate tax return he deducted the amounts due at the date of death, that being the date selected for valuing the estate, on the notes endorsed by his decedent or signed by him as co-maker, or secured by collateral owned by him, and he also deducted the amounts due on notes signed by himself as conservator, the proceeds of which had been used to discharge similar notes. The question is whether these deductions are authorized.

The Commissioner does not question the sufficiency of the evidence to support the Tax Court's finding that "There can be no question as to the bona fides of the several transactions here questioned. Nor is there any doubt as to the obligations being contracted for adequate and full consideration in money or money's worth. All were normal business deals." Neither does he again urge, as he has so many times in the past, always in vain, that the deductions taken cannot be allowed because the consideration for the claims against the estate did not flow to the decedent. See Estate of Borland, 38 B.T.A. 598, 603; United States v. Mitchell, 7 Cir., 74 F.2d 571, 574; Commissioner v. Kelly's Estate, 7 Cir., 84 F.2d 958, 964; Carney v. Benz, 1 Cir., 90 F.2d 747, 749, 113 A.L.R. 365; Commissioner v. Porter, 2 Cir., 92 F.2d 426, 427; Commissioner v. Weiser, 10 Cir., 113 F.2d 486, 487. His position here, to quote from his brief, is that "The claim and the indebtedness in respect to the property of the decedent were on account of obligations in respect to which the son was primarily liable. The estate, therefore, had a right to indemnity or of contribution against the son. In allowing the deductions here in controversy, the Tax Court erred in ignoring this right of indemnity or contribution from the son. The record does not show nor did the Tax Court find that the son was insolvent or unable to reimburse the estate for the sums paid in satisfaction of the son's indebtedness." That is to say, the Commissioner contends that a bona fide business obligation of a secondary nature undertaken for money or money's worth cannot be deducted for estate tax purposes

unless the value of the decedent's right over against the primary obligor is included in computing the gross estate, and since there was no evidence presented to, or finding made by, the Tax Court that the decedent's right over against his son was valueless, the deduction ought not to be allowed because the person claiming a deduction has the burden of proving that he is entitled to it.

The statute makes no specific mention of rights of reimbursement, contribution or indemnity, but it does provide for inclusion in the gross estates of decedents of the value at the time of death of "all property, real or personal, tangible or intangible, wherever situated" (§ 302 of the Revenue Act of 1926, 44 Stat. Part II, p. 70, 26 U.S. C.A. Int.Rev.Acts, page 227), and these words are clearly broad enough to include such rights. The courts in the cases to be cited hereafter have, at least tacitly, so construed them. The crucial question in cases of this sort is what such a right is worth. If it is worth one hundred cents on the dollar an estate will not be reduced by a secondary obligation of the decedent, but if it is worth nothing, a secondary obligation will be as effective as a primary one to reduce the net value of an estate. It is upon this truism that the courts and the Board of Tax Appeals appear, if inarticulately, to have proceeded in the past.

Thus when it has appeared that the decedent's right over against the primary obligor was worth its face value, no deduction has been allowed for a secondary liability (Estate of Lay, 40 B.T.A. 522; Hartford Nat. Bank & Trust Co. v. Smith, D.C.Conn., 54 F.Supp. 579; see also Parrott v. Commissioner, 9 Cir., 30 F.2d 792, certiorari denied 279 U.S. 870, 49 S.Ct. 512, 73 L.Ed. 1007; Buck v. Helvering, 9 Cir., 73 F.2d 760); but when it has appeared that the right over was valueless a deduction for it has been allowed. United States v. Mitchell, 7 Cir., 74 F.2d 571; Commissioner v. Porter, 92 F.2d 426; Carney v. Benz, 1 Cir., 90 F.2d 747, 113 A.L. R. 365; Dodge v. Gagne, D.C., 23 F.Supp. 729. And, when it has appeared that the right was worth something but not its face value a deduction has been allowed to the extent of the amount which actually had to be paid and could not be recovered from the primary obligor by the estate. McCoy v. Rasquin, 2 Cir., 102 F.2d 434; Eckhart v. Commissioner, 33 B.T.A. 426, 440; Estate of Borland, 38 B.T.A. 598. In view of these cases, particularly the two last cited, it does not seem to us that the Tax Court in the case at bar would have allowed the deduction unless it had come to the conclusion that the right of the estate over against the primary obligor, the decedent's son, was valueless. To be sure it made no such finding categorically, but nevertheless we feel that such a finding is implicit in the factual background of the case and that it must have been assumed by the Tax Court that the estate would ultimately have to bear the loss or else it would not have reached the result which it did. The facts upon which we base our conclusion are that at various times the creditors had threatened to sell the collateral pledged to secure the notes; that upon some occasions actions were instituted by creditors against the decedent's estate on the notes, and that the execution on the judgment obtained by the conservator against the son was never levied upon or satisfied although the conservator as a fiduciary was under a legal duty to collect on his judgment, regardless of the family relationship involved, if he could. It seems to us that the creditors would not have taken the steps which they did if the son had been solvent, and that the conservator, if possible, would have collected on his judgment against the son. In the absence of evidence we cannot assume that he neglected to do so in breach of his fiduciary duties. Thus we think that the Tax Court must have concluded, but merely failed to state, that the right of the estate over against the son was valueless, and, this being so, we see no point in remanding the case for a definite finding to that effect.

The decision of the Tax Court of the United States is affirmed.