TOWNER et al. v. COMMISSIONER OF
INTERNAL REVENUE.

No. 206, Docket No. 21595.

United States Court of Appeals
Second Circuit.

Argued May 2, 1950.

Decided June 5, 1950.

---

Theodore Pearson, of New York City (Neile F. Towner, of Albany, N. Y., and Hewitt A. Conway, of New York City, on the brief), for petitioners.

Hilbert P. Zarky, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before L. HAND, Chief Judge, and CHASE and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Petitioners seek review of a decision of the Tax Court, 12 T.C. 962, upholding the Commissioner's determination of an estate tax deficiency to the extent of $159,447.63 against the estate of Margaret Ruth Brady Farrell, late of Albany, New York, of whose estate they are executors. In making their return they deducted from the gross estate, upon computation of the net estate for tax purposes, a portion of the indebtedness represented by a certain note made by the decedent and shown in the estate tax return as $331,938.33. Of this sum, $33,400 is concededly deductible. As to the balance, the question is whether the estate should be allowed a credit under I. R. C. § 812(b), 26 U.S.C.A. § 812(b), since it was entitled to reimbursement from the son when the executors paid the note after the mother's death. The Commissioner ruled against the deduction, the Tax Court sustained him, and this petition for review followed.

The facts found by the Tax Court were either stipulated or appeared from the evidence of Neile F. Towner, one of the executors. Beginning in 1927, the decedent's son, Anthony Brady Farrell, obtained cash on short-term notes to the total sum of $325,550 from the National Commercial Bank and Trust Company of Albany. These notes showed the son as maker and the decedent as endorser except for one where she appeared as maker and he as endorser. The renewals upon maturity were in similar form until at a later date they took the form of showing the decedent as maker and the son as the payee-endorser. In 1932 and 1933, he obtained the additional sum of $33,400 from the bank upon three notes in this form. All the notes were renewed from time to time until in 1937 they were consolidated into a single one for $357,400 made by the decedent and endorsed by the son. This note, too, was renewed from time to time, the amount due being reduced to $332,400 by reason of a payment of $25,000 on account made by the decedent in 1941. The last renewal note was dated May 24, 1944, and matured on August 24, 1944, after the decedent's death which occurred on August 14.

In 1939, the decedent turned over her business affairs to Mr. Towner, who had previously represented her as an attorney. When he discovered the three notes, totaling $33,400, all executed after the effective date of the gift tax, he questioned her about them. As he testified, she then said: "That is my debt. I will think it over and I intend to pay it, and Anthony is under no obligation whatsoever to pay the note." He then told her that she should have included the three notes in a gift tax return. She replied that she was not a business woman and was not familiar with the gift tax. He advised her that the proper way to handle the matter was to have Anthony give her his three notes, plus interest, for these notes. Pursuant to this advice, the decedent did obtain three demand notes from Anthony on or about March 20, 1942, in the total amount of $33,400, plus interest. After her death Anthony paid this indebtedness to the decedent's estate over objection and upon the insistence of the executors. (This is the item allowed as deductible by the Commissioner.) The executors, however, paid the entire amount with interest to the bank, without further claim for reimbursement against Anthony and then asserted this deduction in their estate tax return in the total sum of $331,938.33, the amount payable as of the decedent's death after credit for unearned discount. After the decision below, how-

ever, they did start suit for reimbursement against Anthony in the state court as they attempted to show by motion for a rehearing, to be postponed until after decision in the state action. Denial of this motion below is also assigned as error here.

■ In its decision the Tax Court found that the decedent did not intend to and did not relieve Anthony from his liability on the notes. Since therefore he was obligated to reimburse the estate and had ample means to do so—having received approximately $6,000,000 under his grandfather's will upon his mother's death—the executors were not entitled to the claimed deduction in the estate tax. Petitioners contend, however, that under controlling New York law Mrs. Farrell signed the renewal notes not as surety or accommodation maker, but as principal debtor, intending to assume and assuming sole liability for the debt to the bank. Alternatively they contend that although they conferred a benefit on Anthony in paying the indebtedness the New York courts would not impose an obligation on Anthony to indemnify the estate, it being neither unjust nor inequitable that Anthony retain the benefits so conferred upon him. We must therefore turn to New York law, since the allowable deductions from gross estate under I. R. C. § 812(b) (3) must be of those claims against an estate "as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered."

Turning therefore to petitioners' first contention, we find that N. Y. Negotiable Instruments Law, Consol.Laws, c. 38, § 55 provides: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person." Admittedly the decedent received no value in exchange for her signature on the notes. Therefore she was an accommodation party unless her signature was for some reason other than lending her name to her son in order to enable him to obtain credit from the bank. The only reason of this sort suggested in the record

is that she intended to repay the bank herself, and thus, in effect, make a gift to her son of the amount borrowed. This could be the case either if the transaction from the beginning was intended as a gift to Anthony, or if, having first expected Antony to repay the note, she later determined to release him from his liability.

■ On the issue thus framed we have the finding of fact of the Tax Court that "decedent never made an effective gift to Anthony of the amount of the original indebtedness nor of her right to be reimbursed if she were required to pay the notes in question." While this is persuasive as to the force of the evidence evaluated by an experienced trier of such issues in that court, yet as it presents an interwoven problem of law and fact we shall re-examine it.

■ The contention that decedent actually intended to release her son from his obligation to repay the money he had obtained from the bank depends, in the final analysis, only upon her single statement, made in connection with her discussion of gift taxes with her lawyer in 1939, to the effect that the obligation is "my debt" and "Anthony is under no obligation whatsoever to pay the note." Even giving the fullest credit to the lawyer's recollection of her words and their setting, reading them with all nuances favorable to petitioners' claim, we still cannot discover a definite and unequivocal intent to make a gift, or to release Anthony from his liability. The statement to the lawyer could not itself have been a donative transaction, as petitioners concede. But they rely on Doty v. Willson, 47 N.Y. 580, 583, which held that where it is uncertain whether the delivery of money was intended as a loan or a gift an explicit declaration afterward of an intention to make a gift of the money is competent. That case does not go far enough to cover the present one. For the court there explicitly said that if a debt was originally intended by the parties and then created, "a mere parol declaration afterward would not transform the debt into a gift." It added: "A release or surrender of the evidence of the debt, or some act, as the destruction of the note,

906

bond or other evidence of debt, seems to be regarded as necessary." In that case no writing was made and there was no evidence of the debt; all that appeared was a delivery of money from father to son, and the father's later statement that the money had been a gift. Here, however, we have the quite different situation of a written note always in existence, never surrendered or cancelled, on which the mother acted as a mere accommodation party for her son. A significant act evidencing the claimed gift is therefore lacking.[1]

Moreover, we do have much other evidence bearing upon the entire transaction which we think inconsistent with an intent to make a gift to Anthony or to release him from liability. Perhaps the most striking circumstance is the continued signing of the renewal notes by Anthony. Certainly, in view of her financial worth, Anthony was not required as an accommodation party. Instead it seems evident that he continued to sign the notes because he was liable on them. The suggestion that the bank normally would desire to continue the status quo hardly explains the lack of any evidence on the point at all, beyond the apparently automatic endorsements. Had the mother really intended a gift it would seem most unlikely that she would not have made some characterization of some at least of these many renewals, or some direct suggestion to the bank that the son's name should no longer be added to them.

Other evidence, even that most relied on by the petitioners, seems to us under the circumstances to point the same way. Thus the attorney's warning as to the gift tax in 1939 led not only to the decedent's statement that hers alone was the debt, but also of her intention to think it over, with the result that she took steps at once to substantiate her own non-liability for a gift tax and her son's definite

obligation to pay—an obligation that has since been recognized and enforced. Nothing was then said or done about the remaining indebtedness; this evidence is at most only negative and inferential, with no showing of affirmative donative steps for Anthony's release. Moreover, it seems rather reasonable to suppose that had her lawyer given her a like warning as to this other debt her reaction would have been similar. Since the first intimation we have of a gratuitous intention is on this occasion and since the gift tax went into effect in 1932, there would clearly have been a much greater liability upon her with respect to this larger portion of the obligation. But no one seems to have thought she was liable. Another revealing bit of testimony came from the lawyer in response to an inquiry as to why she did not pay these notes during her life. He said that "Anthony was continually asking his mother for money" and she wished to keep him "within bounds." A good way to do this, it might well have seemed to her, was to hold over his head a large obligation for which he was already responsible; were that to be definitively cancelled, the source of supplies might properly be thought unending. And in any event it would seem that she would have explained some at least of all this to her son. There is nothing in the record to indicate that she ever manifested to Anthony an intent to make this gift or to relieve him from this large obligation.

Under controlling New York law some definitive action by Mrs. Farrell to evidence and effectuate her intent was necessary before Anthony could be relieved from liability. In re Van Alstyne, 207 N.Y. 298, 100 N.E. 802; Farmers' Loan & Trust Co. v. Winthrop, 238 N.Y. 477, 144 N.E. 686; Doty v. Willson, supra. And the burden of proof is on the taxpayer. Since petitioners failed to satisfy

1. We attach no significance to decedent's "O. K." of Towner's 1942 letter, wherein he both explained the occasion for a renewal note ("You will recall that a number of years ago you took over this indebtedness and since that time it has been renewed every three months") and asked approval of a certain disposition of a compensation insurance premium. Even if this be taken as perhaps also some acquiescence in the quoted statement, it is at best no more than routine acceptance of long-standing arrangements with the bank.

this burden of showing such definitive action to evidence an intent to relieve Anthony from liability, the Tax Court was correct in its finding that decedent had never made an effective gift of the amount of the indebtedness or of her right to be reimbursed.

Petitioners, however, also contend that under the circumstances New York courts would hold it inequitable to require him to indemnify the estate. As we understand this ingenious argument, it is that since Mrs. Farrell never sought reimbursement from Anthony, and to the knowledge of Towner, one of her executors, did not expect reimbursement, it would be inequitable for an "officious volunteer"—to use the language which petitioners take from Ely v. Stone, 173 Misc. 117, 17 N.Y.S.2d 266, 269—to demand a repayment which was never intended by the creditor. Petitioners rely heavily on the cited case; but, whatever its authority, its facts are substantially different from those now before us. There a member of a firm of brokers, having carried an account for defendant through boom days until the losses of the early 30s, undertook, without her knowledge, to guarantee it to his copartners. When his executor later sued for reimbursement, the defendant among several defenses (such as bad management by a close relative, friend and adviser) relied specifically upon a letter to her from the decedent before his death stating that the account was closed out satisfactorily. The court held this a good defense to subrogation. Such an overt manifestation of intent is of course lacking here. Moreover, the other equities in the defendant's favor, such as her lack of knowledge of the guaranty, the failure of the deceased to claim payment, the evidence of laches, all told heavily in her favor. But even if the case be construed more strongly as a showing of gift by "waiver," we are not persuaded of its general applicability to modify or change the earlier and more direct expressions of the Court of Appeals cited above. As this court recently observed in Lembcke v. United States, 2 Cir., 1950, 181 F.2d 703, a federal court has some

freedom to differ with the decision of a single trial judge in a state court at least where we are applying federal legislation rather than exercising diversity jurisdiction.

Furthermore, absent some showing of gift, there seems nothing inequitable in expecting the payment by Anthony of a legal obligation. Here the issue is not, save in a purely formal sense, between Anthony and the executors. Rather it is between Anthony and Mrs. Farrell's residuary legatees, her grandchildren, of which Anthony is not one. There is no question about Anthony's ability to repay these loans; and he also had other provision in his mother's will. There is no equity in a holding that a woman has in effect transferred over $300,000 of property to her son from her grandchildren by a mere declaration ten years after the event that she did not intend a transaction with the son to have the legal results which the law imposed upon it. Equities much stronger than those here appearing would be required before the New York principle quoted to us can properly be relied on. As we have seen, there is nothing to show reliance upon, or even knowledge of, the supposed gift on Anthony's part, and hence nothing to show any change of position by him. The equities are not with him and the tax deduction for the estate is not justified.

Petitioners' other allegations of error are without weight. It would be absurd to hold that the value of the estate's claim against a financially responsible obligor is less than the amount of the notes, and thus to allow the estate a deduction for the difference. The Tax Court was well within its discretion in refusing the motion for special leave to file a motion, after the period allotted by the rules had elapsed, for a further hearing and reconsideration. In any event, any attempt to patch up the record at this late date with testimony from Anthony, obviously under pressure, would be quite unpersuasive to overcome the definite obstacles to reversal discussed above. Also we see no reason

for staying this action until the New York suit of the estate against Anthony has been decided. Other factors will be relevant to the decision of that action which are of no import here.

Judgment affirmed.