The **FIRST NATIONAL BANK OF PENNSYLVANIA** and **Louis C. Williams, Executors** under the Last Will and Testament of Herman Leroy Emmet, Deceased, Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 73–61 ERIE.**

United States District Court,
W. D. Pennsylvania.

July 30, 1975.

Jerome Fink, Chief, Refund Trial Section No. 1, Tax Div., U. S. Dept. of Justice, Washington, D. C., Blair Griffith, U. S. Atty., Pittsburgh, Pa., for defendant.

Andrew J. Conner, Erie, Pa., for plaintiffs.

## OPINION

WEBER, District Judge.

Plaintiff Executor seeks to recover Estate Tax paid upon a disallowed deduction for a debt.

Decedent H. L. Emmet, Sr., died testate July 15, 1968. Plaintiff was Executor of his estate. The gross estate amounted to $1,332,222.47. The distributive share of decedent's son, H. L. Emmet, Jr. in the estate amounted to more than the debt in question.

At the time of decedent's death his son, H. L. Emmet, Jr. owed the Bank, which is also Executor of the estate, $94,431.73 on a demand note signed October 4, 1967. On June 6, 1968 decedent had deposited personal securities as collateral for this note. The decedent endorsed the note as a guarantor, not personally, but to the extent of the collateral pledged as security.

By a family agreement between decedent, his wife, and their five children, dated July 1, 1957, which was ratified by a subsequent agreement of March 9, 1966, it was provided that securities provided by decedent would be used to guarantee loans made by the Bank to his children. The agreement provided that such loans would be payable in full upon the death of either decedent or his wife. Under the terms of the agreement and under decedent's will it was provided that if any child owed money on the loans at decedent's death and the collateral or decedent's funds had to be used to pay the loan, each such child's share of decedent's estate was to be reduced by the amount of the payment.

After decedent's death, the Bank, as Executor, sold the collateral and paid off the notes of each child, including that of H. L. Emmet, Jr.

The value of the collateral was included in decedent's gross estate.

In accordance with the terms of the family agreement and decedent's will the share of H. L. Emmet, Jr. in the estate was reduced by $94,431.73, the amount of the payment of his note to the Bank.

However, the Estate claimed a deduction from the value of the assets under Sec. 2053(a)(4) of the Internal Revenue Code which allows a deduction

> "for . . . any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered."

This deduction was disallowed, the estate paid the tax, made a claim for refund, and hence this suit.

The United States claims that the amount of any such deduction claimed for, an indebtedness against property, must be reduced by the value of an existing right of subrogation or indemnity the decedent has against Emmet, Jr.

The United States say that either

(1) The gross estate should include as an asset the value of the right of subrogation or indemnity, under Sec. 2033 of the Internal Revenue Code, in which case this asset would wash out the debt deduction claimed, or

(2) Where the right of indemnity or subrogation is worth the face value of the debt, then there can be no claim against the estate.

It was so held by the Board of Tax Appeals in *Estate of Charles H. Lay*, 40

B.T.A. 522 [1939], in a very similar case:

> "[W]here an estate is liable only as a surety or endorser, it cannot take any deduction because of such liability where the principal has ample assets to pay the indebtedness." (p. 582).

In *Lay,* as in the present case, the primary debtor, the decedent's son, was insolvent at the date of decedent's death, but by reason of his right as a legatee of the decedent's estate, was in a position to pay the debt because his inheritance exceeded the indebtedness.

Plaintiff argues that at all times material here the decedent H. L. Emmet, Sr. was primarily liable for the debt, and that therefore the estate was justified in deducting this debt in the Estate Tax Return regardless of the solvency or insolvency of H. L. Emmet, Jr. However, *In re: Eton Furniture Company,* 286 F.2d 93 [3rd Cir. 1961] does not support this contention. It held that "the one to whom money is loaned or property advanced is liable for the debt regardless of the fact that his name may not appear on the security taken if that security was regarded by the parties purely as collateral". (p. 95). The money in this case was loaned to H. L. Emmet, Jr. No interest of H. L. Emmet, Sr. was served by the loan except his desire to allow his children to anticipate various prospective inheritances. The fact that the original loan from First National Bank to H. L. Emmet, Jr. may have been used to reimburse the Auerbach Trust for illegal advances does not alter the conclusion that the beneficiary of all loans was H. L. Emmet, Jr.

The note in question evidences that Emmet, Sr. was not the primary obligor. He clearly restricted his endorsement as not personal, but as a Trustee of the Auerbach Trust solely to pledge collateral of that trust. His later substitution of his own collateral did not change his position because the limit of his liability still remained the collateral pledged. H. L. Emmet, Sr. is liable only as a surety and only to the extent of collateral pledged.

Nothing produced in the stipulations or evidence in this case establishes that First National Bank could have established personal liability on this obligation against H. L. Emmet, Sr. It was limited to the collateral pledged, whether the Auerbach securities or the personal securities. The trust and confidence which First National Bank reposed in H. L. Emmet, Sr. by reason of his standing in the community did not establish a legal obligation.

The family agreement of July 1, 1967, provided that:

> "[T]he interest given in our wills to each of you shall be subject to a prior lien in favor of the Auerbach Trust and us to reimburse the trust and us for any and all sums advanced or made available in the past as above mentioned or in the future."

Decedent's will made the same provision providing for payment of the loans and deduction of the payment from each child's share of decedent's estate.

■ Under Pennsylvania law, a surety pledging collateral to secure the debt of another is subrogated to the rights of the creditor to the extent of the property pledged. 3 Pa.Law Encyc. *Suretyship* § 23; 35 Pa.Law Encyc. *Subrogation* § 34; *Dickinson's Est.,* 148 Pa. 142 [1892]; *Morris Est.,* 356 Pa. 497, 52 A.2d 172 [1947]; *Dunshee v. Dunshee,* 243 Pa. 599, 90 A. 362 [1914]; *Donaldson's Estate,* 158 Pa. 292, 27 A. 959 [1893].

■ The Estate claims that H. L. Emmet, Jr. was insolvent at the time of decedent's death, and thus the value of the subrogation or indemnity right was nothing. But, on decedent's death Emmet, Jr. became entitled to his share of the principal of the Irving Trust, by virtue of a power of appointment exercised by his mother. The value of this inheritance was not shown. Also, upon the death of his mother on May 10, 1968,

prior to the death of decedent, H. L. Emmet, Jr. became entitled to income from the Auerbach Trust.

The Irving Trust legacy did not pass to Emmet, Jr. through the will of Emmet, Sr.; he became entitled to the principal distribution upon his father's death.

Also, Emmet, Jr. received a bequest in the will of Emmet, Sr. that exceeded the amount of the indebtedness.

We, therefore, conclude that the value of the right of subrogation or indemnity of the Estate was the full value of the note. Emmet, Jr. was not insolvent at the time of his father's death, and the estate was indemnified according to the terms of the agreement and the will.

"Where the debtor . . . is [a] residuary legatee and such interest is worth more than the collateralized debt of such legatee, there is no amount left which represents a claim against the estate since it is the legatee's property which is used to pay the debt for which he is primarily liable. The rule is said to be that where the principal has ample assets to pay the indebtedness no deduction is allowable where the decedent is liable only as surety or endorser." 4 Mertens, *Law of Federal Gift and Estate Taxation*, § 26.44

See: *Hartford National Bank and Trust Co. v. Smith*, 54 F.Supp. 579 [D. Conn.1940].

In *Towner v. Commissioner*, 182 F.2d 903 [2nd Cir. 1950], the Court commented on a similar situation:

"Since therefore he [the son] was obligated to reimburse the estate and had ample means to do so—having received approximately $6,000,000 under his grandfather's will upon his mother's death—the executors were not entitled to the claimed deduction in the estate tax. . . .". (p. 905)

"It would be absurd to hold that the value of the estate's claim against a financially responsible obligor is less than the amount of the notes, and thus to allow the estate a deduction for the difference." (p. 907)

The estate argues that the collateral deposited with the Bank from decedent's own assets represented satisfaction of a tort liability because prior to depositing his personal securities he had deposited, as collateral for the loans to his children, securities from a family estate of which he was trustee. This prior deposit of collateral is alleged to have been in breach of the family trust, and when the possibility that it might be so recognized arose, decedent's personal securities were deposited. No claim was ever made against decedent by the Bank on account of this. The Bank suffered no loss by reason of the prior deposit. There was never any discussion of such liability. The Bank accepted the exchange of collateral. If any right of action against decedent ever existed because of his misuse of securities of the family trust, it was fully satisfied and ended before decedent's death. Thus, at decedent's death, there was no tort liability pending, threatened, or contingent, against him or his estate.

Somewhat similar to the tort liability issue is another issue related to it, the possible loss of trustee's commissions in the family trust as the motive for the substitution of securities. The United States objects to this contention as not being among the grounds set forth in the claim. However, because of its relationship to the "tort liability theory" we will consider it.

Briefly stated, as we understand it, plaintiff argues that decedent deposited his personal securities to replace those of the family trust because his estate might be denied the trustee's commissions if the trust securities were found to have been hypothecated at the time of his death. Of course, this never happened. Even if at the time of his death the trust securities were still pledged, the trust estate would suffer no loss because both the legacy under decedent's will and the distribution of corpus of

the trust estate exceeded the amount of the debt.

It is clear from the testimony here that the substitution of the decedent's personal securities as collateral in place of Auerbach Trust securities arose after the death of Mrs. Emmet, Sr. when a corporate trust company was substituted as co-trustee. The corporate co-trustee required possession of the actual securities.

■ We believe that the claims of discharge of tort liability and potential denial of Trustee's Commissions are in *pari materia* and are answered by the same legal conclusion. Both liabilities are speculative or hypothetical. No damage to the trust estate ever occurred, no loss was ever suffered, no claim or threat of claim was ever asserted. No beneficiary of the trust objected or was in a position to object because all had approved the actions of H. L. Emmet, Sr. as trustee in the family agreement.

"We think actuality was the thought foremost in the mind of Congress when it put the phrase 'claims against the estate' in this and other Revenue Acts. The claims which Congress intended to be deducted were actual claims, not theoretical ones." *Estate of Jacobs v. Commissioner* 34 F. 2d 233 [8th Cir. 1929].

No action for deceit by the Bank would lie because the Bank never suffered any loss, an essential element of such a cause of action in Pennsylvania. 16 Pennsylvania Law Encyc. *Fraud* § 2; *Newman v. Corn Exchange National Bank*, 356 Pa. 442, 51 A.2d 759 [1947].

There is no basis for knowing that Trustees' commissions would have been withheld. All beneficiaries of the trust agreed to the transaction. None of them were damaged and the estates of decedent and his wife received the commissions.

We conclude, therefore, that there is no legal basis for this deduction for the payment of this note. The note was in fact paid by the primary obligor out of his share of the inheritance from decedent's estate.

### ORDER AND JUDGMENT

And now, July 25, 1975, this matter having come on for trial by the court without jury, and under the stipulations filed and the evidence presented it is

Ordered that the claim for refund be denied and that judgment be and hereby is ordered for the defendant.

The foregoing Opinion represents the findings of fact and conclusions of law of the Court.