Clarence D. Rogers and Willa L. Rogers v. Commissioner.
Rogers v. Commissioner
Docket No. 2947-64.
United States Tax Court
T.C. Memo 1965-298; 1965 Tax Ct. Memo LEXIS 32; 24 T.C.M. (CCH) 1648; T.C.M. (RIA) 65298; November 10, 1965
*32 Held: Petitioners failed to prove that an investment in the total amount of $3,000 was made in 1960 under an agreement to purchase stock which resulted in a loss in that amount in 1960; therefore, they are not entitled to a deduction for 1962 under sections 1211(b) and 1212, 1954 Code, of $1,000 for a capital loss carryover from 1960. Clarence D. Rogers, pro se, 3322 Milvertom Rd., Shaker Hgts., Ohio. Donald H. Richards, for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined a deficiency in income tax for 1962 in the amount of $173. The only issue is whether an alleged capital loss deduction is allowable for 1962, limited to $1,000 under section 1211(b), 1954 Code, as a capital loss carryover from 1960. The questions are whether a capital loss was sustained in 1960 and whether the amount was $3,000. Findings of Fact The stipulated facts are so found and are incorporated herein by reference. Petitioners are residents of the area of Cleveland, Ohio. They filed joint returns for 1960, 1961, and 1962 with the district director of internal revenue *34 in Cleveland. Clarence D. Rogers is referred to herein as the petitioner. On their return for 1962 petitioners reported gross income of $3,834.72, and adjusted gross income of $2,684.72 after deducting losses of $1,150 consisting of 2 items of $150 and $1,000. Respondent disallowed both of the loss deductions and various other deductions. For 1962, petitioners reported no taxable income; they reported a net loss in the amount of $198.08. After disallowing several deductions and making adjustments, respondent determined that petitioners' taxable income for 1962 was $2,951.52 and that there is an income tax deficiency of $173. Petitioners allege in this case that respondent erred in not allowing the capital loss deduction, limited to $1,000, taken as a carryover from 1960 for an alleged capital loss in 1960 of $3,000. They do not contest any of the other determinations of the respondent for 1962. The facts relating to the alleged capital loss of $3,000 in 1960 are as follows: St. Andrews Beach Corporation owned and operated the Dolphin Motel located on Jekyll Island, Georgia. Petitioner managed, the Dolphin Motel for about 6 months in 1960. Standy Investments, Inc., owned 7,076 shares *35 of the common stock of St. Andrews Beach Corporation, and had subscribed to an additional 44,703 1/2 shares of the same common stock under a stock subscription agreement and note payable to St. Andrews on which there was a balance due in April, 1960, of $1.60 per share, plus accrued interest. Standy had an interest in 51,779 1/2 shares of common stock of St. Andrews. Standy also owned a miniature golf course adjoining the Dolphin Motel. On April 8, 1960, petitioner and G. D. Rodgers entered into an agreement with Standy Investments, Inc. to purchase from Standy the 51,779 1/2 shares of common stock of St. Andrews, and to do various things involving the reorganization of the management of the St. Andrews Beach Corporation. This agreement recites that Standy was to receive $35,000 from petitioner and G. D. Rodgers for the shares of stock and the miniature golf course, subject to certain conditions set forth in the agreement, and that "This agreement and all conditions contained herein depend on the referred to reorganization of management to be effected within thirty (30) days from the date of this agreement." The agreement also provides that a period of 90 days "from the date of reorganization *36 [of St. Andrews] would be allowed to the parties of the second part ["G. D. Rodgers and C. D. Rodgers"] to pay the purchase price [$35,000] to the party of the first part [Standy Investments]." The agreement does not specify that the individuals, "G. D. Rodgers and C. D. Rodgers", were respectively obligated to pay any particular part of the $35,000. (In the agreement, petitioner's name is spelled, "Rodgers.") On the joint return of petitioners for 1960, in Schedule H, "Other Income Or Losses", a deduction of $3,000 was taken as an ordinary loss which was described as "Standy Investments, Inc., Atlanta, Georgia." Upon his audit of the return for 1960, the respondent's agent accepted some cancelled checks of petitioner totaling $850 (produced by petitioner) as sufficient evidence to establish that in 1960 petitioner had paid $850 to Standy Investments, Inc., under the agreement of April 8, 1960. The agent concluded further, that petitioner was unable to substantiate that he had paid an additional $2,150 to Standy in 1960, the balance of the claimed loss of $3,000, and that because of petitioner's inability to substantiate his alleged payment of the full amount, $2,150 of the *37 ordinary loss deduction could not be allowed. The respondent's agent allowed an ordinary loss deduction of $850 for 1960 because he ascertained that in September 1960, St. Andrews Beach Corporation was found to be bankrupt. There is no evidence that the petitioner contested the abovedescribed disallowance of an ordinary loss deduction for 1960 of $2,150. However, on the 1962 return of the petitioner, in Schedule D, "Gains Or Losses From Sales Or Exchange Of Property", a capital loss carryover from 1960 was claimed in the amount of $5,240, and a capital loss deduction was taken with respect thereto in the amount of $1,000, the maximum amount under section 1211(b), 1954 Code. This item of alleged capital loss in 1960 is the same loss for which petitioner claimed an ordinary loss deduction of $3,000 on the joint return for 1960 with respect to an alleged payment of $3,000 to Standy Investments corporation under the agreement of April 8, 1960, described above. In the petition, the petitioners limited their claim for a capital loss carryover from 1960 to $3,000, and petitioner does not now claim the benefit of an alleged capital loss in 1960 of $5,240, as was claimed on the joint return *38 for 1962. Petitioner did not claim a capital loss carryover from 1960 on the return for 1961. Petitioner's present claim that he sustained a capital loss of $3,000 in 1960 for the purpose of a loss carryover to 1962 is based upon the claim that he paid $3,000 in 1960, under the agreement of April 8, 1960, to the Standy Investments corporation. Ultimate Findings (1) The Fulton National Bank in Atlanta, Georgia, did not receive $3,000 in 1960, or at any time, from petitioner, or from Max Krotman on petitioner's behalf, or from any other person on petitioner's behalf, for the purpose of apyment to Standy Investments, Inc., under the purchase agreement dated April 8, 1960. (2) Petitioner failed to prove that he paid $3,000 to Standy Investments, Inc. in 1960, and that he sustained a loss in 1960 in excess of $850 with respect to the agreement with Standy Investments, Inc., or any other transaction with Standy. (3) Petitioner failed to prove that any loss sustained in 1960 with respect to any payment under the agreement with Standy Investments, Inc. was a capital loss, and no part of a loss in 1960 with respect to that agreement is deductible as a capital loss carryover to the *39 taxable year 1962. Opinion Deductions are a matter of legislative grace and not equitable considerations. Whether or not a claimed deduction can be allowed is in the first instance dependent upon whether there is a statutory (Internal Revenue Code) provision which authorizes the deduction. The party claiming the deduction, upon whom the burden of proof rests, must prove by clear and convincing evidence that his claim comes within and complies with the provisions of a statutory provision which deals with the particular kind of deduction claimed. United States v. Woodall, 255 F. 2d 370; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440; Welch v. Helvering, 290 U.S. 111; Reinecke v. Spalding, 280 U.S. 227. As a matter of law, the respondent's determinations have the status of being deemed to be prima facie correct where, as in this case, the taxpayer has the burden of proof. Rule 32, Rules of Practice of this Court. Petitioner claims a capital loss deduction for 1962, carried over from 1960. Section 1222, Internal Revenue Code of 1954, defines capital gain or loss as the gain or loss from "the sale or *40 exchange of a capital asset". Section 165(c) of the Code places a limitation on loss deductions of an individual, limiting such deductions to those incurred either in a trade or business, or in a transaction entered into for profit, though not connected with a trade or business. Section 1211(b) limits the losses of an individual from the sales or exchanges of capital assets to $1,000 or another amount, whichever is smaller. See, also, sections 165(g) and 1212 of the Code, and section 1.165-1(c)(3), Income Tax Regulations. Petitioner had the burden of proving that he sustained a capital loss in 1960, the amount thereof, and, if so established, that he was entitled to a deduction for a capital loss carryover to 1962 in the limited amount of $1,000. Upon consideration of the record in this case, it must be concluded that petitioner failed in his burden of proof and that the claimed capital loss carryover deduction of $1,000 is not allowable. Petitioner's position is not clear about the alleged amount of his claimed loss under the April 8, 1960, agreement with the Standy Investments corporation. When his joint return for 1960 was audited by respondent's agent, *41 he produced some of his own cancelled checks totaling $850 which the agent accepted as evidence of payments under the agreement. At the trial of this case, petitioner claimed that Max Krotman held funds of petitioner and that petitioner instructed Krotman to pay $3,000 thereof to The Fulton National Bank for payment to Standy. Thus, it appears that petitioner takes the position that he paid $3,850 under the agreement. On the other hand, in his petition filed in this case, petitioner alleged that his loss was $3,000 under the agreement, and $3,000 was the amount of the same loss claimed on petitioner's joint return for 1960. Although petitioner's testimony relating to Krotman appears to indicate a discrepancy in the amount of the claimed loss, the pleadings and the record as a whole lead to an understanding that the amount which petitioner claims to have paid under the agreement for the purpose of a loss deduction, is $3,000. Another inconsistency is found between the kind of loss claimed on the 1960 return and on the 1962 return. Petitioner claimed an ordinary loss of $3,000, not a capital loss, on the 1960 return, in Schedule H, with respect to the alleged transaction with Standy *42 corporation. Respondent determined on auditing the 1960 return that petitioner could substantiate a payment to Standy of only $850, he allowed an ordinary loss deduction in that amount, and he disallowed an ordinary loss deduction for the unsubstantiated balance of $2,150. On the 1962 return, with respect to Schedule D and the claim for a capital loss carryover from 1960, petitioner stated that the return of petitioners filed for 1960 showed "an investment loss of approximately $5,240.00. The return was audited by the Collector of Internal Revenue, and [in] October 1962 was accepted as filed by the Collector of Internal Revenue." The record in this case shows that the underlined part of the quoted statement of petitioner is not true. On the 1960 return petitioner claimed 2 ordinary loss deductions in Schedule H and only part of each one was allowed on audit; a claimed loss of $1,864.25 for alleged advances to Dolphin Motel was allowed in the amount of only $477.73 and deduction of $1,386.52, the balance, was not allowed for lack of substantiation; the claimed loss deduction of $3,000 (Standy corporation) was disallowed to the extent of $2,150 (as stated above). At the trial of *43 this case, petitioner frankly admitted that he did not have any written or documentary evidence or receipts or cancelled checks establishing that he paid in 1960, $2,150 in excess of $850 under the purchase agreement with Standy corporation. He did not call any witnesses but relied on his self-serving statements. He contends that there are "circumstances" which support his claim, but he did not produce any "circumstantial" evidence other than the agreement with the Standy corporation, which does not help him here. The agreement does not recite that any down payment was made at the time of execution by either petitioner or G. D. Rodgers. It was provided in paragraph 2 that the agreement was conditional upon the performance of a condition precedent, that within 30 days from April 8, 1960, G. D. Rodgers and C. D. Rodgers (the petitioner) would arrange for a reorganization of the officers and board of directors [St. Andrews Beach Corporation] with a plan presented over the signatures of Dr. George Lawrence and of the parties of the second part [the Rodgers], and that these officers and directors should be acceptable to Standy Investments, Inc. There is no evidence that G. D. Rodgers *44 and the petitioner complied with the provisions of paragraph 2 of the agreement within 30 days after April 8, 1960, or at anytime. Paragraph 3 of the agreement provides that the purchase price of $35,000 would be payable 90 days from the date of the reorganization. There is no evidence here that the agreement ever became effective and that petitioner and G. D. Rodgers ever became obligated to make any payment thereunder. By September 1960, St. Andrews Beach Corporation was bankrupt and its outstanding stock was worthless. The April 8th agreement allowed until about May 8, 1960, for the reorganization of the management of St. Andrews Beach Corporation and an additional 90 days from May 8, 1960, until August 8, 1960, for the payment of the purchase price of $35,000 for the common stock of St. Andrews. In view of the bankrupt condition of St. Andrews by September 1960, and the conditions prescribed in the agreement, it was indeed incumbent upon petitioner under his burden of proof in this case to prove by credible, clear and convincing evidence that he in fact paid either $3,000 or $2,150 under the agreement in 1960. His self-serving, uncorroborated testimony falls far short of the required *45 proof. With respect to his claimed payment of $850 under the agreement, which petitioner deems is represented by some of his cancelled checks made payable to "cash", the checks are not on their face connected with the purchase agreement with Standy, and although the respondent's agent accepted them as some evidence of payments by petitioner under the agreement, they are of doubtful value as proof that petitioner paid even $850 in 1960. The agreement with Standy was mainly for the purchase of shares of stock of St. Andrews. Petitioner was unable to present proof, other than his uncorroborated statements, that any of the common stock of St. Andrews ever was issued to him as the result of any payments by him. Petitioner's testimony that he pledged 400 shares of common stock of St. Andrews Beach Corporation, plus a lien on his automobile, for a loan of $4,000 is hardly credible under the record here because the stock was worthless. There is no evidence to substantiate this assertion of the petitioner, who did not go as far as to prove by whom or by what lending organization the alleged loan was made, or when it was made. Petitioner has not proved that in 1960 he paid any more than $850 *46 under the agreement, for which amount respondent allowed an ordinary loss deduction for 1960; he has not established that he had any balance of a loss to carryover to 1962, if such loss was a capital loss, which is another matter that we need not discuss in view of the general failure of proof about the amount of the alleged loss. Petitioner, recognizing his difficulties in meeting his burden of proof, indicated at the trial that he relied upon what seems to him to be some equitable aspects of his claimed loss. He was not aware of the well-established rule that whether deductions for Federal tax purposes are allowable cannot be determined on the basis of so-called "equitable" considerations, but must be decided under the applicable provisions of the Internal Revenue Code. Respondent's determination is sustained. Decision will be entered for the respondent.